Ernest A. ARMSTRONG, Plaintiff,

v.

COMMERCE TANKERS CORP. and Empire Ship Agents and Brokers Corp., Defendants.

No. 67 Civ. 2274.

United States District Court, S. D. New York.

July 11, 1969.

Paul C. Matthews, New York City, for plaintiff; John F. X. McKiernan, New York City, on the brief.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for defendants; Thomas H. Healey, New York City, of counsel; Robert C. Buff, New York City, on the brief.

## OPINION AND ORDER

LEVET, District Judge.

This is a motion for judgment N.O.V. for defendants after a Special Verdict holding defendants liable to plaintiff for negligence in a seaman's action for personal injuries. A copy of the Special Verdict is hereto appended. Under Rule 42(b), liability was tried first.

Also, at the conclusion of the trial on damages in the above-entitled action (1) plaintiff moved to set aside the verdict as inadequate; and (2) defendants moved to set aside the same verdict as excessive and as inconsistent. Subsequently, the plaintiff withdrew his motion.

In the pretrial order (p. 1) the plaintiff confined his claim of negligence of defendants to the following:

"* * * and due to the negligence of the defendant Commerce and that Charles Darcy or some other employee of the defendant negligently slammed the door shut while the plaintiff's thumb was in it."

The pretrial memorandum of plaintiff stated that "Plaintiff is not relying on the doctrine of res ipsa loquitur." He also declared: "Plaintiff may call Charles Darcy or any other member of the crew having knowledge of the facts."

On this verdict, the jury held defendants liable for negligence, but not liable for unseaworthiness, and determined that defendants had not shown plaintiff guilty of contributory negligence.

At the end of plaintiff's case on liability and at the end of the trial of that issue, defendants again moved (1) to dismiss the action for lack of proof of negligence; and (2) for a directed verdict for defendants. By reason of the jury's verdict against plaintiff on unseaworthiness, defendants did not renew the motion as to that factor.

The court reserved decision on the motion in respect to negligence and on the motion for a directed verdict.

The court then tried the issue as to damages to the jury, which returned a verdict for plaintiff in the sum of $12,-000.[1] The defendants renewed the motions for dismissal and judgment N.O.V. with respect to negligence. Between the trial of liability and the trial of damages under the Jones Act, the parties agreed to a judgment of $2,000 in favor of plaintiff to cover plaintiff's other claims: (1) Wages (other than overtime) to the time of termination of the voyage; and (2) Maintenance and cure.

Pending determination of the present motion, entry of judgment has been stayed.

■ Upon a motion for a directed verdict, defendants admit every fact in evidence which tends to sustain plaintiff's case and every inference reasonably inferable therefrom. Hellweg v. Chesapeake & Potomac Telephone Co., 71 App.D.C. 346, 110 F.2d 546 (1940); Worcester, et al. v. Pure Torpedo Co., 140 F.2d 358 (7th Cir. 1944).

The proof itself, as far as it goes, is not disputed. For the purpose of this motion the facts are as follows:

Plaintiff, Armstrong, started to go to sea in 1951 and served as deck hand. On April 19, 1967, plaintiff joined defendant's ship, the SS Thalia, at Singapore between 7:00 and 8:00 P.M. and was assigned by the Chief Mate to the 12 to 4:00 A.M. watch (SM 3–4).

That night he worked as a gangway security watch from 12 midnight to 4:00 A.M., when he went to the mess hall, had a sandwich, and went below, where he slept until 5:45 (4–5). Then he assisted in taking in some stern lines to effect a change in anchorage until about 8:00 A.M. (6).

After washing up in his forecastle, he went to visit a friend, one Charles Darcy, in a room on the port side of the ship (7). There he found Darcy, a "white haired wiper," and a machinist holding a "discussion" which continued about 30 minutes, during which time the wiper talked about being a pilot. Plaintiff sat on the edge of the bunk with the door which opened inward on his left (8–9).

Although the wiper had never flown a plane, he said he wanted to be a pilot, whereupon plaintiff suggested, "Well, why don't you do it," whereupon the wiper "got mad" and plaintiff rose to leave (9–10).

The critical episode then followed. Armstrong got up, spoke to Darcy, and turned towards the door to leave. Darcy came over to plaintiff, put his hand on plaintiff's shoulder, and said, "Yes, you better go" (10). It must be noted here

---

1. Copy of Special Verdict is hereto Appended.

that there was no testimony that Darcy pushed or propelled plaintiff. The door opened inward.

Plaintiff continued, "I was stepping towards the door" (11). "The door was open" (50). "I lost my balance. I reached out to steady myself. I grabbed the door jamb. My thumb was in line with the door. Then the door was swung closed with force on my thumb" (11). As plaintiff said, "The door slammed" but he saw nobody touch the door (53).

At that time the condition of the sea was "slight swells," but plaintiff said the door had not moved. The machinist had left and only plaintiff, Darcy and the wiper were in the room (11).

Although the door was not equipped with a door check (12), plaintiff said this door was the same "as any other door going into any other man's living quarters," and the same kind of door as on other ships (26).

The door worked, was not broken, was "Okay" when Armstrong opened it (26). When he lost his balance, he said he started to fall from one side to the other and reached up with his left hand [2] and grabbed the door jamb on the side where the hinges were (30), with his thumb in the door jamb (53).

Plaintiff denied touching the door itself and *denied seeing anyone touch the door at that time* (30, 31).

At the court's request, plaintiff re-enacted the accident through a demonstration at a similar door opening into the court room (49–53).

Plaintiff said neither Darcy nor the wiper was near the door. *Plaintiff could not explain how the door moved nor why it moved* (53). At the time plaintiff started to lose his balance, Darcy was at his left (54). The door was at plaintiff's right. Neither Darcy nor the wiper was called to testify and no explanation as to their whereabouts or present employment was supplied.

Thus, in brief, we have a stumble or a loss of balance by the plaintiff which resulted in the placing of his left thumb upon the door jamb a little above his hear, and a mysterious closing of the door, unexplained as to cause by plaintiff or any one else.

The question, of course, is this: Has plaintiff shown any negligence on the part of defendants?

Although there is no evidence that either Darcy or the wiper was closing the door, and, in fact, plaintiff's own evidence is to the contrary, plaintiff seems to claim that there is some inference, however it may be derived, that either Darcy or the wiper did something to the door. This, of course, is speculation. In any event, even if we assume that it had occurred, this fact alone does not warrant any conclusion, absent knowledge or observation that plaintiff had his thumb in the jamb, of any negligence on the part of Darcy or the wiper. Darcy or the wiper would have to have closed the door with knowledge of plaintiff's vulnerability, or would have to have acted unreasonably recklessly. No such evidence was presented.

### I.

### PROPRIETY OF A DIRECTED VERDICT

"A directed verdict or peremptory instruction is proper when the evidence is without conflict and is such that all reasonable men must agree on one conclusion, or where the evidence is insufficient to sustain a verdict for the party against whom the motion is directed." 65A C.J.S. Negligence § 251(6), p. 792; Pickering v. Corson, 108 F.2d 546 (7th Cir. 1940); Hemphill v. Mississippi Power Co., 84 F.2d 971 (5th Cir. 1936).

### II.

### BURDEN OF PROOF

In a personal injury suit the burden of proving defendant's negligence is on plaintiff. In Martin v. United

---

2. There was no evidence as to whether plaintiff was right or left handed.

States, 96 U.S.App.D.C. 294, 225 F.2d 945, 948 (1955), C. J. Miller stated:

" * * * We said in F.W. Woolworth Co. v. Williams, supra, 59 App. D.C. [347] at page 348, 41 F.2d [970] at page 971:

" 'The burden of proving defendant's negligence is upon the plaintiff. The mere happening of the accident does not shift to the defendant the burden of establishing that the accident did not occur through its negligence, nor does it create a presumption of negligence. On the contrary, the legal presumption is that reasonable care was exercised by the defendant. * * * ' "

See also Harshberger v. Associated Transport, Inc., 282 F.2d 179, 184 (2nd Cir. 1960) and cases cited on p. 184.

The plaintiff has the burden of proving by a preponderance of the evidence that he was injured by defendants' negligence. "The injury must be traced to a specific instrumentality or cause for which the defendant was responsible or it must be shown that defendant was responsible for all reasonably probable causes to which the accident could be attributed." Law of Torts, Prosser, pp. 222, 223; Manley v. New York Tel. Co., 303 N.Y. 18, 100 N.E.2d 113 (1951).

As to the proof of causation, Prosser writes as follows:

"On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. * * * " Prosser on Torts (3rd ed.), p. 245.

## III.

### UNDER THE JONES ACT THE PLAINTIFF WAS REQUIRED TO OFFER MORE THAN A MERE SCINTILLA OF EVIDENCE

█ █ Federal courts have held that "a mere scintilla of evidence is not enough to require the submission of an issue to the jury." De Zon v. American President Lines, Ltd., 129 F.2d 404, 407 (9th Cir. 1942) (a Jones Act case), aff'd 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943).

In De Zon, supra, the Ninth Circuit Court of Appeals, citing Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932) wrote:

" * * * although the Jones Act has given 'a cause of action to the seaman who has suffered personal injury through the negligence of his employer' (287 U.S. 372, 53 S.Ct. 174, 77 L.Ed. 368), still it does not make that negligence which was not negligence before, does not make the employer responsible for acts or things which do not constitute a breach of duty. * * * " 129 F.2d at 407–408.

See Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (an FELA case) and Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957), which made the doctrines of De Zon and Rogers applicable to Jones Act cases. See also Hawley v. Alaska Steamship Co., 236 F.2d 307 (9th Cir. 1956).

In the present case proof of negligence is wholly lacking.

## IV.

### CHOICE OF PROBABILITIES

█ "Evidence which presents no more than a choice of probabilities is not deemed substantial enough to warrant submission of a case to the jury. Liability cannot be predicated upon mere conjecture or speculation as to the proximate cause of damage." Dayton Veneer & Lumber Mills v. Cincinnati, N.O. & T.P. Ry. Co., 132 F.2d 222, 223 (6th Cir.

1942) and cases cited therein. See also Atchison, Topeka & Sante Fe Ry. Co. v. Hamilton Bros., 192 F.2d 817, 821 (8th Cir. 1951); Coffman v. Southern Coal Co., 52 F.Supp. 351, 354 (W.D.Arkansas 1943).

## V.

### SURMISE, CONJECTURE AND SPECULATION

■ "It is a fundamental rule of law that the burden is upon the one asserting negligence to prove it by a preponderance of the evidence, and such burden is not sustained by evidence that is surmise, speculation or conjecture." Martin K. Eby Construction Co. v. Neely, 344 F.2d 482, 485 (10th Cir. 1965), aff'd 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967), rehearing den. 386 U.S. 1027, 87 S.Ct. 1366, 18 L.Ed.2d 471 (1967), and cases therein cited. See Waters v. National Life & Accident Ins. Co., 156 F.2d 470 (10th Cir. 1946); United States v. Carroll, 212 F.Supp. 422, 432 (W.D. Arkansas 1962); Penna. R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819 (1933).

The Third Circuit in Haldeman v. Bell Telephone Company of Pennsylvania, 387 F.2d 557 (3rd Cir. 1967), stated:

"It is axiomatic that in the trial of a case like this plaintiffs

"'* * * must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.' Restatement (Second), Torts § 433B, Comment a at 442 (1965)." 387 F.2d at 559.

■ The presentation of weaker and less satisfactory testimony when higher evidence could have been produced in itself may awaken suspicion. Vanity Fair Paper Mills, Inc. v. F.T.C., 311 F.2d 480, 485 (2nd Cir. 1962).

■ No inference could be drawn against the defendants at the trial of this case; correspondingly, no presumptions favor plaintiff at trial. As stated by the Second Circuit, Chase, C. J.:

"A defendant, if so advised may well let the case go to the jury on the weakness of the evidence presented by a plaintiff, who has the burden of proof without being taken to task for failure to call certain witnesses, or have any adverse inference drawn which would not follow from an entire failure to refute the evidence introduced. In this regard a party who introduces no evidence, and has witnesses exclusively within its control, stands the same as a party who introduces no evidence and has no such witnesses." Robins Dry Dock v. Navigazione Libera, 32 F.2d 209, 210–211 (2nd Cir. 1929).

■ Plaintiff argues that the entire defense was "predicated upon the theory that plaintiff's accident was caused or contributed to by his intoxication." (Plaintiff's brief, p. 5) Plaintiff erroneously neglects to consider the basic principle here that he is bound to show negligence upon the part of defendant and that such negligence was the proximate cause of plaintiff's injury. This proof of negligence *must be shown before* any consideration of contributory negligence becomes relevant. And certainly a proof of plaintiff's freedom from contributory negligence does not itself establish defendants' negligence. See Calvert v. Katy Taxi, Inc., et al., 413 F.2d 841, decided June 26, 1969, Second Circuit Court of Appeals.

## VI.

### PROXIMATE CAUSE AS A QUESTION OF LAW

■ "Proximate cause is ordinarily a question of fact for the jury, but where the facts are undisputed, it becomes a question of law for the court." Martin K. Eby Construction Co. v. Neely, 344

F.2d 484, 486 (10th Cir. 1965), aff'd 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967), rehearing den. 386 U.S. 1027, 87 S.Ct. 1366, 18 L.Ed.2d 471 (1967).

The circumstances of the case may be such as to make the question of negligence one of law for the court.

## VII.

### RES IPSA LOQUITUR

 The rule of res ipsa loquitur may be invoked only when, under the circumstances involved, direct evidence is absent and unavailable. 65A C.J.S. Negligence § 220.8, notes 58 and 60, pp. 543, 544; Stiles v. Gove, 345 F.2d 991 (9th Cir. 1965); Gray v. Baltimore & O.R. Co., 24 F.2d 671 (7th Cir. 1928); Dindo v. Grand Union Co., 331 F.2d 138 (2nd Cir. 1964); Hall v. National Supply Co., 270 F.2d 379 (5th Cir. 1959).

 The doctrine of res ipsa loquitur is not applicable here.

## VIII.

### THE ABSENT WITNESSES

Two witnesses, Darcy and the wiper, who might have provided answers to mere speculative surmises, were not called. No explanations were given by anyone as to whether they were still employed or under the control of the defendants. Darcy was a friend of plaintiff (SM 7). Both Darcy and the wiper apparently were union members.

Wigmore states that "The non-production of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause." II Wigmore on Evidence, p. 162.

Wigmore cites numerous precedents which sustain this principle (p. 162, fn.). Among these are the following: United States v. Schindler, 10 F. 547 (1880) (omission to call a witness who, as the evidence showed, was fully able to confirm testimony of defendant); The Fred M. Laurence, 15 F. 635 (1883) (failure to call a seaman on board at the time of a collision who knew whether the Laurence was the boat which did the damage); The Joseph B. Thomas, 81 F. 578 (1897) (failure to call as witness employees who, as shown by other evidence, may probably have committed an act of negligence resulting in the injury complained of).

Wigmore further comments:

"It is commonly said that no inference is allowable where the person in question is *equally available* to both parties; particularly where he is actually in court; though there seems to be no disposition to accept such a limitation absolutely or to enforce it strictly. Yet the more logical view is that the failure to produce is *open* to an inference *against both parties,* the particular strength of the inference against either depending on the circumstances. * * *" [footnotes omitted] Wigmore on Evidence, Vol. II (3rd ed.), pp. 169–171.

See also cases cited by Wigmore in note 4, p. 171.

McCormick comments as follows:

" * * * it seems that equality of favor is nearly always debatable, and that though the judge thinks the witness would be as likely to favor one party as the other, he should permit either party to argue the inference against the adversary. [footnote omitted] At least, it would appear in this supposed case of 'equal favor,' if the witness's knowledge is directed toward a particular issue, that then the argument should be available against the party who has the burden of persuasion on that issue." McCormick on Evidence, p. 534.

 Consequently, it would be fair to state that at least at the time of trial the jury would have been entitled to draw an inference against the plaintiff due to plaintiff's failure to call Darcy or the wiper, since plaintiff had the burden of proof as to defendants' negligence. However, it is necessary at the present time to draw all inferences in favor of the plaintiff, for purposes of determining defendants' motion for judgment N.O.V. Nevertheless, no infer-

ence in this regard may be drawn against the defendants at the present time.

## IX.

## DEFENDANTS' MOTION TO SET ASIDE DAMAGES VERDICT AS EXCESSIVE

 Defendants claim that the verdict of $4,000 for past loss of wages (Item 3(b)) is inconsistent with the verdict of no damage for future loss of wages (Item 4(a)). See Special Verdict appended hereto. This contention seems to be based upon the theory that, if plaintiff can in the future work at his trade or at other labor without loss, that, therefore, he could have done so in the period between injury and trial. However, this argument is not convincing and I, therefore, deny defendants' motion as to the damage verdict.

## CONCLUSION

Accordingly, I find that plaintiff has not proved negligence on the part of the defendants. I find this to be so taking every inference in favor of the plaintiff.

Defendants' motion for judgment N.O. V. is granted. Therefore, the jury determinations both as to negligence and as to damages are set aside as contrary to the clear weight of the evidence and the Clerk of the Court is directed to enter judgment for defendants on the present case.

Defendants' motion to set aside the verdict of the jury for excessive damages is denied. Plaintiff's motion to set aside the verdict of the jury for inadequate damages is withdrawn.

However, I direct entry of judgment for plaintiff pursuant to stipulation of counsel in the amount of $2,000 in satisfaction of the claim for wages, maintenance and cure.

I direct taxation of costs and judgment for costs in favor of defendants on the Jones Act case. However, I direct that no costs be taxed or entered in favor of either party on the wages, maintenance and cure case since costs were not contemplated by the stipulation of counsel.

So ordered.

## APPENDIX A

### SPECIAL VERDICT

1. Has plaintiff proved by a fair preponderance of the credible evidence that the defendant was negligent in any respect due to the actions of Charles Darcy or any other employee in the operation of the bunk room door of the wiper on the SS Thalia as the same existed on April 20, 1967, and that such negligence was a proximate cause, in whole or in part, of the accident there sustained by plaintiff on April 20, 1967?

<u> 12 </u> _____
 Yes No

Go on to question 2.

2. Has plaintiff proved by a fair preponderance of the credible evidence that the SS Thalia was unseaworthy in any respect due to the construction or equipment of the bunk room door of the wiper as the same existed on April 20, 1967, and that such unseaworthiness was a proximate cause, in whole or in part of the accident there sustained by plaintiff on April 20, 1967?

_____ <u> 12 </u>
 Yes No

If your answer to either question 1 or question 2 is "Yes," proceed to question 3.

If your answers to both questions 1 and 2 are "No," omit all further questions and sign the Special Verdict on the last page.

3. If your answer to either question 1 or question 2 above is "Yes," has defendant proved by a fair preponderance of the credible evidence that negligence on the part of plaintiff contributed in whole or in part to the accident sustained by him on board the SS Thalia on April 20, 1967?

 12
_____ _____
 Yes No

If your answer to question 3 is "Yes," proceed to question 4.

If your answer to question 3 is "No," omit question 4 and sign the Special Verdict on the last page.

4. If your answer to question 3 is "Yes," to what extent did plaintiff's own negligence contribute to his injuries? (Express in terms of a percentage)

————————————%

Sign the Special Verdict on the last page.

*Richard J Connolly*
Juror No. 1

*Ruth Schulz*
Juror No. 2

*William P. Prister*
Juror No. 3

*Dorothy L. Cresky*
Juror No. 4

*Isabelle N. Rosenberg*
Juror No. 5

*Mary J. Foster*
Juror No. 6

*Adra P. Hass*
Juror No. 7

*W.R. McLird*
Juror No. 8

*Margery K. Soltes*
Juror No. 9

*Catherine Morrison*
Juror No. 10

*Learaine Kerii*
Juror No. 11

*Irene M. Carbay*
Juror No. 12

[A1982]

## APPENDIX B

7/1/69

## SPECIAL VERDICT AS TO DAMAGES

1. (a) Has plaintiff proved by a fair preponderance of the credible evidence that, as a result of the accident of April 20, 1967, he sustained damages consisting of past pain, suffering and disability?

<u>12</u> ——
Yes No

(b) To what award, if any, is plaintiff entitled for past pain, suffering and disability?

$ 8,000 $\frac{00}{xx}$

Go on to question 2.

2. (a) Has plaintifff proved by a fair preponderance of the credible evidence that, as a result of the accident of April 20, 1967, he sustained damages consisting of future pain, suffering and disability?

—— <u>12</u>
Yes No

(b) To what award, if any, is plaintiff entitled for future pain, suffering and disability?

$————————

Go on to question 3.

3. (a) Has plaintiff proved by a fair preponderance of the credible evidence that, as a result of the accident of April 20, 1967, he sustained damages consisting of past loss of wages?

<u>12</u> ——
Yes No

3. (b) To what award, if any, is plaintiff entitled for past loss of wages?

$ 4,000 $\frac{00}{xx}$

Go on to question 4.

4. (a) Has plaintiff proved by a fair preponderance of the credible evidence that, as a result of the accident of April 20, 1967, he sustained damages consisting of future loss of wages?

—— <u>12</u>
Yes No

If your answer to question 4(a) is "Yes," answer 4(b), 4(c), 4(d) and 4(e).

If your answer to question 4(a) is "No," proceed immediately to question 5 and omit all further sub-questions under question 4.

(b) What is the amount of the average annual loss of future wages as a result of the accident of April 20, 1967?

$———— per annum

(c) What is the number of years in the future during which this average annual loss of future wages will continue, based upon work expectancy, as a result of the accident of April 20, 1967?

_____ years

(d) What is the result of (b) multiplied by (c)?

$_____

(e) To what total award, if any, is plaintiff entitled for future loss of wages as a result of his injuries, AFTER DEDUCTION of the discount for present worth of future loss, as a result of the accident of April 20, 1967?

$_____

Go on to question 5.

5. Total of amounts, if any, under questions 1, 2, 3 and 4(e).

$12,000 $\frac{00}{xx}$

Sign the Special Verdict on the last page.