Ernest A. ARMSTRONG, Plaintiff-Appellant,

v.

COMMERCE TANKERS CORP. and Empire Ship Agents & Brokers Corp., Defendants-Appellees.

No. 555, Docket 33852.

United States Court of Appeals, Second Circuit.

Argued Feb. 25, 1970.

Decided March 20, 1970.

**958**

John F. X. McKiernan, New York City (Paul C. Matthews and George J. Engelman, New York City, on the brief), for plaintiff-appellant.

Robert S. Blanc, Jr., New York City (Hill, Betts, Yamaoka, Freehill & Longcope and Robert C. Buff, New York City, on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and CROAKE,* District Judge.

ANDERSON, Circuit Judge.

The plaintiff, Ernest A. Armstrong, newly signed on as a seaman aboard defendant's vessel, SS *Thalia*, went off duty at 0800 April 20, 1967, while the ship was anchored in Singapore harbor. On invitation he went to the quarters of a shipmate, named Darcy, and sat on a bunk to the right of the open door. In the quarters at the time were Darcy, a white-haired wiper, and a machinist, also crew members. A general conversation ensued. The machinist left, and the three remaining talked about learning to pilot an airplane. The white-haired wiper took offense at something said by Armstrong, and the plaintiff got up to leave. Darcy put his hand on Armstrong's shoulder and said, "Yes, you had better go." The door, which swung into the cabin, was wide open. As Darcy put his hand on Armstrong's shoulder, the latter, who was headed for the doorway and two to two and a half feet away from

it, lost his balance and reached out for support. Though the door jamb was on his right, he apparently reached over his head with his left hand and grasped the door jamb in such a way that his left thumb was between the hinged edge of the door and the doorframe. While he was so situated he claims the door slammed shut on his thumb "with force" and produced a compound fracture. At that time Darcy was about two feet behind and to the left of Armstrong. The plaintiff did not know in what part of the quarters the white-haired wiper was, but plaintiff testified he did not hit the door himself nor did he see anyone else near the door because, he said, he was facing the other way. There were slight swells in Singapore harbor at the time, but the plaintiff said they did not move the ship. He could not explain how or why the door moved.

The plaintiff at the trial had expressly disclaimed any reliance upon the theory of *res ipsa loquitur*. He did not call Darcy or anyone else who had been present at the time the incident occurred, as witnesses, but relied on his own testimony alone. The defendants rested at the end of the plaintiff's case and moved for a directed verdict on which the court deferred decision.

The jury returned a special verdict finding that (1) the negligence of one of defendants-appellees' employees was the proximate cause of Armstrong's injury; (2) there was no unseaworthiness; and (3) Armstrong was not contributorily negligent. It awarded the plaintiff $12,000 in damages.

The defendants-appellees moved for judgment n. o. v., and the trial court granted the motion on the ground that proof of negligence was wholly lacking. The sole issue on appeal is whether or not there was sufficient evidence from which the jury could reasonably infer that one of Armstrong's fellow crew members slammed the door shut on his thumb.

The only testimony in the case was that of the plaintiff. A little over half

---

* Of the Southern District of New York, sitting by designation.

of it was taken up with cross-examination and some re-direct on the question of plaintiff's use of alcoholic beverages and the history of his recurrent drinking problems. The court fully charged on the matter of intoxication and its relationship to contributory negligence. The jury specifically found there was none. This appears to have been the principal point of conflict in the trial court; and the interrogation relative to the persons and circumstances just prior to and subsequent to the fracturing of Armstrong's left thumb are, particularly from the purview of a reviewing court, unclear and unsatisfactory. No plan or drawing showing either the size and shape of Darcy's quarters or the location of the door and the furnishings was put in evidence. There was not even a rough sketch by the witness to illustrate his testimony. Other than stating that Darcy was about two feet behind and slightly to the left of him when he lost his balance, Armstrong did not testify where in the cabin the other crew men were, or where the white-haired wiper was, or what he was doing the last time Armstrong observed him. There was no evidence of any act performed or committed by either Darcy (except placing his hand on Armstrong's shoulder, as noted) or by the white-haired wiper. Consequently, there was no fact shown from which an act of negligence could be inferred. There was no testimony specifying when Armstrong crossed the raised threshold and went outside the cabin before his injury, if, indeed, he did so. There was no testimony of what was said or done by anyone immediately after Armstrong's thumb was fractured.

To attempt some clarification of the situation up to and including the point of the injury, the trial judge asked the plaintiff to use an area around an inward opening door in the courtroom to demonstrate what happened through a reenactment of his movements and the positions and actions of others. The interrogation was participated in by the court, and by counsel for both parties. As frequently occurs, counsel for the plaintiff did not take care to make certain that the reported testimony clearly and fully described for the record the movements, gestures, locations, references, etc., used or indicated in the demonstration so, with a few exceptions, the meaning of it was lost on appeal. For example: the plaintiff was asked about the location of the bunk in relation to the door; his answer was, "The bunk would be back about here." This court was given no information as to the location of "here," nor did the record disclose the distance between or the relative positions in the room of the bunk and the door.

The appellant's claim rests upon the proposition that when he was headed out of the cabin he left his shipmates, Darcy and the white-haired wiper, in the room behind him, that his left thumb was fractured in the closing door and that the jury was entitled to draw the inference that his injury was proximately caused by some negligent act on the part of either or both of them.

■ There was, however, no evidence of any act, negligent, or otherwise, committed by either of them which related to the injury, and the trial judge properly granted the motion to set aside the verdict in favor of the plaintiff and entered judgment n. o. v. for the defendants. Whether the motion is one to direct a verdict or to set aside a verdict which the jury has returned, the test applied by the court is the same. The evidence must be viewed in the light most favorable to the party other than the movant. The motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him. 5 J. Moore, Federal Practice, ¶ 50.; 2 [1] (2d ed.); F. James, Civil Procedure § 7.11, pp. 277–278 (1965).

In the present case the first aspect of this test is applicable, since there was no evidence to support an inference that

Darcy or the white-haired wiper committed an act which resulted in plaintiff's injury. There was no evidence that either was near the door or took or could have taken any action with respect to it.

Although, as this Circuit has emphasized before, a jury's verdict is not lightly to be set aside, it is apparent that the jury's finding that some act of negligence was performed by the plaintiff's shipmates was sheer surmise and conjecture. See Fleet Messenger Service, Inc. v. Life Ins. Co. of North America, 315 F.2d 593, 598 (2 Cir. 1963); O'Connor v. Pennsylvania R. R. Co., 308 F.2d 911 (2 Cir. 1962).

The judgment of the district court is affirmed.