John TRAUPMAN, Plaintiff-Appellant,

v.

AMERICAN DREDGING COMPANY, Defendant-Appellee.

No. 174, Docket 72-1467.

United States Court of Appeals, Second Circuit.

Argued Nov. 16, 1972.

Decided Dec. 5, 1972.

Louis Feren, New York City, for plaintiff-appellant.

Martin M. Baxter, New York City (Alexander, Ash, Schwartz & Cohen, New York City and Sidney A. Schwartz, New York City, of counsel), for defendant-appellee.

Before SMITH, KAUFMAN and MULLIGAN, Circuit Judges.

## PER CURIAM:

This is an appeal from a judgment dismissing a complaint in a jury trial at the end of the plaintiff's case. The action was brought in the United States District Court, Eastern District of New York, to recover damages for personal injuries under 46 U.S.C. § 688 (Jones Act) and under the general maritime law of unseaworthiness. Hon. John F. Dooling, Jr., granted the defendant appellee's motion for a directed verdict at the close of the plaintiff's case. We affirm.

Plaintiff Traupman was a deck hand on the defendant's dredge, PHILADELPHIA, operating in the Hackensack River. Prior to the accident a steel cable leading from the dredge to an anchor had snapped. After it had been spliced, the plaintiff and three other crew members went out in a floating derrick some 150 ft. to 200 ft. from the dredge to drop the anchor. It was noticed that the cable which measured about one to one and a half inches in diameter and weighed about 1000 pounds, had become fouled around the anchor's stock or crossbar. The four crew members were simply ordered to unsnag the cable. Two went on one side and two on the other, to push and pull it free. The following passages from the plaintiff's testimony are as complete a description of the accident as the record provides:

We begin to pick up this cable and unsnag it off the crossbar. So John says, "O.K., let's pick it up."

My partner and I were pulling and they were pushing; as we were pulling and they were pushing it came off the crossbar, and automatically, like a jerk, it just went down. It snapped down, and I went down with it. Nobody hollered, "Let go" or "Drop it" or nothing. (Transcript p. 46)

I was bending down when we were unsnagging it and when they let go, nobody hollered or nothing and left the weight on me. I was looking down when it happened. . . . (Transcript p. 88)

Traupman's unseaworthiness claim is based on allegedly inadequate directions and supervision. The Jones Act claim is based on the carelessness of his co-workers. Basically Traupman's claim is that he should have been given some warning when the others were about to drop the line. Judge Dooling granted the defendant's motion for a directed verdict at the close of the plaintiff's case, observing that the record was barren of testimony as to the events surrounding the accident. Without such a narrative, it would be impossible for any jury to conclude reasonably that the other men should have warned Traupman as they were about to drop the line, since the situation apparently was "one of such transparent self-evidence that the words were needless. . . ."

■■ We agree with the trial court's ruling. While we recognize the special function of a jury in a Jones Act case, that statute does not prescribe liability without some proof of fault. Schulz v. Pennsylvania R.R., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668 (1956). The plaintiff must show facts from which a jury can reasonably infer that either his employer or his co-workers were negligent. Lake v. Standard Fruit & S.S. Co., 185 F.2d 354 (2d Cir. 1950); Armstrong v. Commerce Tankers Corp., 311 F.Supp. 1236, 1239–1241 (S.D.N.Y.1969), aff'd, 423 F.2d 957 (2d Cir.), cert. denied, 400

U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970). Absent a situation involving *res ipsa loquitur* (see G. Gilmore & C. Black, The Law of Admiralty § 6–36 (1957)) mere proof that an accident occurred is not evidence of anyone's negligence. Plaintiff cites several Jones Act and FELA cases where the juries were allowed to speculate on the connection between the defendant's admittedly negligent act and the plaintiff's injury.* These cases, however, cannot be read to give a jury the same latitude in determining whether the act complained of was negligently performed in the first place.

As Judge Dooling noted, the record was far too incomplete to support a finding that any warning was necessary in the circumstances. The task—unsnag the line—was not complex; elaborate instructions were hardly necessary. Certainly none of the four reasonably expected to continue holding the cable after it had been freed from the stock, until an order to drop it had been given. And plaintiff did not claim that he was told to hold on to it. The only reasonable inference to be drawn from plaintiff's testimony is that he unfortunately was looking in the wrong direction at the crucial moment. Any jury verdict based on negligence on the record before us would be the product of sheer surmise and conjecture.

Affirmed.

SMITH, Circuit Judge (dissenting):

I dissent. There was enough, if barely so, to go to the jury on the negligence of the fellow seamen in letting go of the 1000 lb. cable without warning, throwing all the strain on plaintiff. It may be that the jury would not credit the testimony as to the weight of the cable or failure to warn, but that was for the jury.

* Gallick v. Baltimore & O.R.R., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Rogers v. Missouri P.R.R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497 (1959); La-

vender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1956); Jacob v. New York City, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942); Nunes v. Farrell Lines, Inc., 227 F.2d 619 (1st Cir. 1955).