**Vincent MAZZOLA and Gina Mazzola, Plaintiffs,**

v.

**CHRYSLER FRANCE, S. A., Defendant.**

**No. 74–C–1675.**

United States District Court, E. D. New York.

July 11, 1978.

Lipsig, Sullivan, Mollen & Liapakis, P. C., New York City, for plaintiffs; Jay W. Dankner, Pamela A. Liapakis, New York City, of counsel.

Lester, Schwab, Katz & Dwyer, New York City, for defendant; Harold Lee Schwab, New York City, of counsel.

BARTELS, District Judge.

Motion for judgment notwithstanding the jury's verdict or, in the alternative, for a new trial pursuant to Rule 50 of the Federal Rules of Civil Procedure.

This is a product liability case brought by the plaintiff Vincent Mazzola as a driver of a Simca car against Chrysler France, S.A. as manufacturer, for damages arising out of an accident predicated upon alleged negligence in design and strict liability for defective product. The case was tried on February 14–28, 1978, and the jury was charged on February 28, 1978.

According to the evidence, it appears that in July 1974 while driving a four-door Simca 1967 car on the Southern State Parkway, plaintiff suddenly felt hot liquid hit his body from inside the car and also saw steam fill the car, whereupon he put on his brake and stopped the car causing it to spin on the side of the road. He went or was taken to the hospital and while in the hospital for treatment, his brother attached the inlet hose to the heater which, according to the

plaintiff, had become disconnected and had caused a flood of hot water and steam into his car. The brother thereupon drove the car to plaintiff's home in Valley Stream.

Plaintiff instituted this suit against the defendant accusing it of manufacturing the car, 1967 Simca 1000, with a defective heater system design. His main contention is that the location of the connection of the heater hose to the heater in the lower front passenger part of the car represents a defect in design. The car in question was purchased by plaintiff in 1972 from one Mrs. O'Neill, a coworker with the plaintiff at E. F. Hutton & Co., after the car had been in two accidents. After this, the third accident, the car was inspected in March 1975 at plaintiff's home in Valley Stream by defendant's former employee, Daniel Gallagher, and also by Isaac Stewart, defendant's expert, all in the presence of plaintiff's attorney. A similar inspection was made recently, in February 1978, at Reese Dodge lot in Lynbrook by defendant's chief engineer, Claude Daubertes.

Defendant denied that the accident was in any way caused by negligence in designing or by a defective design in the car or the location of its heater system connection, and denied that at the time the accident occurred the plaintiff was using a Simca heating system in his car. Plaintiff did not and could not deny that this was the third accident in which the car was involved. It was undenied that the heating system in the car had been repaired whereby, among other things, an unmoulded type of hose and a type of clamp different from the Simca moulded hose and clamp were used to complete the repairs. Evidence was also produced demonstrating that the Simca type of hose securely clamped to the heater was essential to the Simca heating system. The evidence was overwhelming that the repair job was a poor repair job which the defendant contended automatically removed the Simca heating system in the Simca car. Plaintiff, on the other hand, replied that the mere fact that the system required any kind of hose to be connected to the heater with a clamp in the lower front passenger compartment of the Simca constituted a defective design which caused the accident and, further, that the hose attachment as designed was not shielded. Through his expert witness Stieglitz, plaintiff also asserted that hoses were known to come off and if under pressure could spray hot water; that there were two alternate designs for heating systems which were safer and feasible; and that the repairs and the use of an unmoulded hose did not cause the accident. However, Stieglitz had never examined the Simca car and had never heard of a hose disconnecting from the fittings to the heater.

The parties consented to a bifurcated trial dividing the case into two parts, i. e., liability first, damages, if necessary, second. At the end of the trial and summations the court charged the jury with respect to liability for a negligent or defectively designed product in accordance with the New York authorities. The jury then returned a verdict, required by a ballot submitted to it by the court, finding the defendant liable for both negligence in designing the Simca heating system and in marketing a defectively designed heating system. The crux of the case focused upon three essential questions: (1) was the moulded hose an essential part of the Simca design, (2) if it was, was it reasonably foreseeable that upon repair an unmoulded hose could be substituted which would make the design defective, and (3) was the design itself defective regardless of the type of hose used by reason of the connection of the hose to the heater in the lower front passenger compartment.

The court realizes that the standard to be applied for a motion n. o. v. is the same as the test for ordering a directed verdict and, further, that such a motion may be granted only when there can be but one reasonable conclusion as to the proper judgment. Rule 50, F.R.Civ.P. It is also true that, in considering the motion, the court cannot weigh credibility of the evidence and it must view the evidence in a light most favorable to the plaintiff in this case. *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970); *Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 959 (2d Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970).

■ The evidence was undenied that (1) the moulded Simca hose was before production subjected to laboratory testing and also to actual vehicle testing, both under extreme testing conditions; (2) the exterior of the hose was specially manufactured and moulded by the Hutchinson Company pursuant to blueprints to satisfy the specifications of Simca in order to provide a unique internal dimensional configuration to conform to the routing of the hose through the automobile to the rear engine; (3) the interior shape of the hoses was specifically moulded at their ends to conform precisely to the shape, circumference and length of the inlet valve nozzle and the outlet valve nozzle of the heater; (4) the purpose of the configuration was to eliminate the "kinking" effect which would result if an unmoulded hose was placed in the necessary position; and (5) the Simca car has been in two prior accidents and the substitute hose found after the third accident was not a Simca hose but was an unmoulded hose used in repair. The hose was introduced into evidence for the jury to see and handle. It would take no more than a good look to recognize the difference between an ordinary hose, such as that used in repair and placed in evidence, and a Simca type hose with its special moulded configuration. One of the essential parts of the heater system was that the ends of the hose were moulded to fit the valves, as above explained, and that the hose with this type of fitting would be tightly clamped to the heater valves with standard double wire clamps. There were 1,688,000 Simca cars of this kind manufactured and sold and no complaint had ever been registered with respect to a slippage of the hose from the heater valve, and there was no evidence whatsoever that anyone, except this plaintiff, had ever substituted or attempted to substitute a different type of hose (and a used one at that) completely unmoulded including its ends for the Simca moulded type of hose firmly clamped to the valve in the driver's compartment. It was undenied that a number of foreign cars also used hose connections with heaters located in the driver's compartment. Similarly, it was un-denied that Simca moulded hoses could be purchased at Simca dealers. With the above legal standard in mind the court is convinced that no reasonable jury could find that the Simca moulded hose firmly connected to the heater was not a part of the Simca heating system.

■ No evidence was introduced to indicate the necessity of shields in either foreign cars or the Simca car to protect the driver in the event of a hose slippage from the heating system. No evidence was adduced that a Simca moulded hose had slipped from its heating connection and that damage would occur to the driver, since no such event had ever occurred. The case cited by plaintiff, *Micallef v. Miehle Co., Division of Miehle-Goss Dexter, Inc.*, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 117, 348 N.E.2d 571, 574 (1976), is factually inapposite because there "the danger of human contact being well known," the process obviously exposed the operator to an injury. No such facts were presented in this case. The court is, therefore, led to conclude under the circumstances that no reasonable person could find from the evidence in this case that it was reasonably foreseeable that upon repair of the Simca heating system a different type of hose completely unmoulded would be substituted for the Simca moulded hose, nor that in such event the unmoulded hose, if tightly clamped, would slip and cause water injury to the driver. The court believes that the evidence was so strong and overwhelming that reasonable and fair-minded jurors in the exercise of impartial judgment could not conclude that the accident was the result of a defective design or a foreseeable use of a substitute hose. The manufacturer was not required to foresee that there would be a slippage of the Simca hose if firmly clamped as it left the factory and that there would be substituted an entirely different type of hose for the Simca hose.

The court believes that the motion for judgment n. o. v. should be and hereby is granted.

## II

■ However, if this n. o. v. judgment is hereafter vacated or reversed, the court, as

an alternative, in the exercise of its discretion, hereby grants the motion for a new trial. The ground for conditionally granting this motion for a new trial is that the court believes that the weight of evidence requires a finding that (1) the plaintiff did not use the defendant's heating system design and that the accident was not caused by the location of this heating system in the driver's compartment; (2) the defendant was not negligent in designing and locating its heating system with a hose connection in the driver's compartment; (3) the defendant did not sell a product which was so defectively designed and likely to be harmful that a reasonably prudent person would not have marketed the product as so designed; (4) it was not reasonably foreseeable that the moulded hose would slip or need repair or upon repair in the case of slippage or otherwise an unmoulded hose would be substituted for the moulded hose; and (5) plaintiff failed to establish his burden of proof that any negligent or defective design caused the accident.

SO ORDERED.