**BOSTEVE, LTD. and Steven J. Tannenbaum, Plaintiffs,**

v.

**William F. MARAUSZWSKI, Defendant.**

**No. 84 CV 3929.**

United States District Court, E.D. New York.

July 14, 1986.

---

Sheldon Rosen, Cilluffo, Cama, Rosen and Danzi, Commack, N.Y., for plaintiffs Bosteve Ltd. and Stephen Tannenbaum.

Neil Cahn, Newman & Cahn, Carle Place, N.Y., for defendant William F. Marauszwski.

<hr />

1. Bosteve Ltd. was incorporated in Delaware on September 29, 1979. Bosteve's sole asset was

## MEMORANDUM and ORDER

SHIRA A. SCHEINDLIN, United States Magistrate.

In August or September, 1982, plaintiffs, Bosteve Ltd. ("Bosteve")[1] and Steven J. Tannenbaum ("Tannenbaum"), made an oral agreement with defendant, William F. Marauszwski ("Marauszwski"), whereby plaintiffs would sell a yacht to defendant in return for which defendant would pay the amount remaining due on the boat's mortgage to the Chemical Bank. As so often happens, the deal fell apart with each side accusing the other of breach of contract, fraudulent misrepresentation, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (1982).

Prior to the trial each side moved to dismiss the other's RICO claims. Plaintiffs' RICO claims were dismissed by the court but defendant was granted leave to replead his claim with the required specificity. See Fed.R.Civ.P. 9(b). A complaint alleging RICO-mail fraud must specify, inter alia, precisely what statements were made, when and by whom they were made, the content of such statements and the manner in which they were misleading. See Moss v. Morgan Stanley Inc., 719 F.2d 5, 19 (2d Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); see also Conan Properties, Inc. v. Mattel, Inc., 619 F.Supp. 1167, 1172 (S.D.N.Y. 1985).

By consent of the parties a trial was held before this court. A jury of six returned a verdict in favor of the defendant on all claims and counterclaims including the RICO charge. Specifically, the jury awarded $9,361.00 as incidental breach of contract damages, "relief from any and all commitments to Chemical Bank as consequential breach of contract damages, $8,504.00 as damages for fraudulent mis-

the yacht in question.

representation and $1,500.00 as damages for violations of RICO.[2]

Plaintiffs now move for judgment notwithstanding the verdict or, in the alternative, for a new trial. Plaintiffs assert that the evidence presented at trial failed to state a claim for relief under RICO. Plaintiffs also argue that defendant lacks standing to assert a RICO claim since the predicate acts, if proven, were not directed at defendant. Finally, plaintiffs assert that there can be no claim under RICO where there is no underlying felony conviction.[3] Additionally, plaintiffs argue that the jury was confused with respect to the awarding of damages for both breach of contract and fraud. Plaintiffs urge that all of defendant's counterclaims be dismissed as a matter of law because the jury's findings were against the weight of the evidence.

Defendant has cross-moved to correct and clarify the judgment entered on April 11, 1986 by entering a specific dollar amount for the contract and fraud claims, computing treble damages for the RICO award and awarding attorneys' fees under RICO.

## I. DISCUSSION

### A. RICO

18 U.S.C. § 1964 (1982) provides a civil remedy for violations of RICO. Under this statute, an injured party may recover treble damages and attorneys' fees. 18 U.S.C. § 1964(c)(1982). In his amended counterclaim Marauszwski alleges that Tannenbaum and Bosteve violated 18 U.S.C. § 1962(c)(1982).[4]

In order to prevail on his RICO claim Marauszwski must prove, *inter alia*, that Tannenbaum conducted the affairs of Bos-

teve through a "pattern of racketeering activity" as defined in § 1961(5).

> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

*Id.*

Prior to *Sedima S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) a number of courts held that a RICO violation could be established based on proof of at least two predicate acts, even if they were both part of a single scheme to defraud. *See e.g., United States v. Starnes,* 644 F.2d 673, 678 (7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981) (two logically connected acts constituted a pattern); *United States v. Weatherspoon,* 581 F.2d 595, 601–02 (7th Cir.1978)(five mailings within one scheme was held sufficient); *Beth Israel Medical Center v. Smith,* 576 F.Supp. 1061, 1066 (S.D.N.Y.1983) (the mere allegation of two predicate acts was sufficient to constitute a pattern).

In *Sedima,* while addressing the issue of establishing a "racketeering injury" the Court, in a footnote, defined the term "pattern of racketeering."

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern "requires at least two acts of racketeering activity," § 1961(5)(emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be suf-

---

**2.** The jury was instructed that if it returned a verdict on the RICO charge the court would treble that award pursuant to the statute.

**3.** Both prior to trial and after defendant had presented his case, plaintiffs moved to dismiss defendant's RICO claims on similar grounds. The court reserved decision on both motions. *See Gratian v. General Dynamic, Inc.,* 587 F.2d 121, 122 (2d Cir.1978), *infra* at 201.

**4.** 18 U.S.C. § 1962(c) states as follows:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

ficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S.Rep. No. 91–617, p.158 (1969)(emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also id., at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearing, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act.

— U.S. at —, 105 S.Ct. at 3285 n. 14.

In *Northern Trust Bank/O'Hare, N.A., v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill. 1985), which followed closely on the heels of *Sedima,* the court concluded that the alleged fraudulent mailings, all of which were connected to a singe kickback scheme, failed to establish a "pattern of racketeering activity." *Id.* at 833. Several courts in this Circuit have now adopted this definition. In a Memorandum and Order dated April 24, 1986, the Honorable Eugene H. Nickerson stated:

[h]ere the predicate acts upon which plaintiffs rely all arise from an alleged single unlawful scheme: the mailing of false and misleading financial and proxy statements. Multiple mailings that are part of the same criminal activity do not constitute a pattern of racketeering activity.

*Eisenberger v. Spectex Industries, Inc.,* 644 F.Supp. 48 (E.D.N.Y.1986).

Similarly, in *Furman v. Cirrito,* No. 82 Civ. 4428 (S.D.N.Y. Mar. 12, 1986) (Cooper, J.) (available on Lexis), [available on WESTLAW, DCTU database] the court concluded:

we are compelled to conclude that the alleged activities of defendants herein did not establish a pattern. Although each of the separate acts of mail fraud were related to each other ... [a]ll of the claimed acts were committed in furtherance of one scheme.

*Id.; see also, Commercial Agropequaria Menichetti Fuente S.A.C.I. v. Heather Trading Corp.,* No. 85 Civ. 3240 (Sweet J.)(S.D.N.Y. Mar. 27, 1986)(available on Lexis) [Available on WESTLAW, DCTU database] (the court, after citing the *Sedima* footnote, concluded that one fraudulent misrepresentation in one transaction in one time frame was not a pattern despite multiple allegations of predicate acts); *Utz v. Correa,* 631 F.Supp. 592 (S.D.N.Y.1986)(no "pattern" exists under RICO where every predicate act was part of one isolated fraudulent episode); *Richardson Greenshields of Canada Limited v. Patel,* 643 F.Supp. 672 (S.D.N.Y.1986)(Walker, J.)

RICO is frequently pled in lawsuits involving commercial disputes, breach of contract and state law fraud. *See Haroco, Inc. v. American National Bank & Trust Co.,* 747 F.2d 384, 386–87 (7th Cir.1984), *aff'd,* — U.S. —, 105 S.Ct. 3292, 87 L.Ed.2d 361 (1985)(per curiam)(discussing the misuse of civil RICO); *Zola v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 84 Civ. 8522 (S.D.N.Y. Jan. 23, 1986)(Haight, J.)(available on Lexis) [Avail-

able on WESTLAW, DCTU database] (the court noted in a securities fraud case that plaintiff pled the "now inevitable civil RICO claim.").

■ In the present action, assuming all of defendant's claims are true as found by the jury, the RICO claim cannot stand. The underlying predicate acts proved at trial concerned a single scheme to defraud the New York State Department of Taxation and Finance by incorporating Bosteve out of state prior to the purchase of the boat in order to evade the payment of New York State sales tax on the boat. There was no evidence or allegation of any other scheme to defraud.[5]

As noted in *Sedima,* RICO was not meant to provide redress for "sporadic activity" but rather for the "infiltration of legitimate business." *Sedima,* —— U.S. ——, 105 S.Ct. 3275 n. 14. RICO was not intended to combat "isolated events." *Id.* As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the *threat of continuing activity* to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* (citing S.Rep. No. 91–617, p.158 (1969)(emphasis added)).

It is apparent that the single act of Tannenbaum, who at worst cheated New York State of the taxes owed as a result of the purchase of a boat, does not give rise to a RICO violation. This isolated tax evasion scheme cannot establish a pattern of racketeering activity. Thus, defendant's RICO counterclaim must be dismissed as a matter of law.

■ As noted earlier, plaintiffs moved to dismiss defendant's RICO counterclaims at the close of defendant's proof. Rule 50(b) provides that

> [w]henever a motion for a directed verdict made at the close of all the evidence

is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury *subject to a later determination of the legal questions raised by the motion.*

*Id.* (emphasis added). Pursuant to that mandate the RICO claim was submitted to the jury.[6] Because of the rapidly changing state of the law with respect to RICO in this Circuit and elsewhere it was particularly appropriate to submit this case to the jury. *See Gratian v. General Dynamics, Inc.,* 587 F.2d 121, 122 (2d Cir.1978)(a trial judge should submit a case to the jury rather than grant a directed verdict so that there is no need for a second trial if the appellate court disagrees with the decision of the trial court). Moreover, when there is doubt about a substantial point of law and insufficient time to consider all the factual and legal arguments it is proper to reserve decision on a directed verdict. *See Hooks v. New York Central Railroad Co.,* 214 F.Supp. 4 (N.D.N.Y.1963) *rev'd on other grounds,* 327 F.2d 259 (2d Cir.1964). *See also, United States v. Millsap,* 208 F.Supp. 511, 513 (D.Wyo.1962) (citing *Newton v. Glenn,* 149 F.2d 879 (5th Cir.), *cert. denied,* 326 U.S. 758, 66 S.Ct. 100, 90 L.Ed. 456 (1945)(an overruled motion for a directed verdict is deemed submitted to the jury subject to a later determination of whether the party was entitled to judgment).

The standards for granting a judgment n.o.v. are the same as those for granting a directed verdict. *Mazzola v. Chrysler France, S.A.,* 470 F.Supp. 24, 26 (E.D.N.Y. 1978). In *Aaron Ferer & Sons Ltd., v. Chase Manhattan Bank,* 731 F.2d 112, 121–22 (2d Cir.1984)(quoting *Mattivi v. South African Marine Corp., "Huguenot",* 618 F.2d 163, 167–68 (2d Cir.1980)), the appeals court held that

> [t]he trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its

---

**5.** Defendant claims that there were two schemes to defraud, one to defraud New York State and the other to defraud him. This assertion is without merit. Marauszwski and New York State were simply two victims of the same scheme.

**6.** The jury was instructed that two acts, sufficiently related, constituted a "pattern".

judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the nonmovant the benefit of all reasonable inferences), the trial court should grant a judgment n.o.v. [or directed verdict] only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Id.* A review of the evidence, conducted in a light most favorable to defendant, reveals but a single scheme to defraud. In view of the growing body of law rejecting the applicability of RICO to a single fraudulent scheme, which this court follows and adopts, the verdict is clearly against the weight of the evidence. Defendant's RICO claims are therefore dismissed and a verdict is directed in plaintiffs' favor on defendant's RICO counterclaims.

In the alternative, defendant seeks an order for a new trial on the RICO claims.

If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.

Fed.R.Civ.P. 50(b). The standard for granting a new trial is more lenient than the standard for granting judgment n.o.v. *See Bevevino v. Saydjari,* 574 F.2d 676, 683 (2d Cir.1978)(a motion for a new trial may be granted even if there is substantial evidence to support the jury verdict.). *See also Lang v. Birch Shipping Co.,* 523 F.Supp. 1112, 1114 (S.D.N.Y.1981). When both a motion for a new trial and judgment n.o.v. are made, the trial judge should rule on both motions. *Montgomery Ward &*

*Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). In this case, however, a new trial is not warranted because defendant's RICO claim must fail as a matter of law.

■ Because defendant has failed to prove a pattern of racketeering this court need not address plaintiff's other attacks on the RICO claim, that the predicate acts were not directed at defendant and that plaintiff had not been convicted of a felony.[7]

### B. *Breach of Contract Damages*

As damages for breach of contract the jury awarded defendant compensatory damages of "relief from any and all commitments to Chemical Bank" and incidental damages of $9,361.10. *See* Special Verdict Form at ¶ 12. The jury found that the parties had made a contract and that plaintiff breached said contract. *Id.* at ¶¶ 1, 11.

#### 1. *Compensatory Damages*

During the trial the parties stipulated that the outstanding balance of the loan was $31,199.03. *See* Defendant's Ex. "D". Where there is no factual dispute on a particular issue a court may grant a directed verdict or judgment n.o.v. *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 54 (2d Cir.1984). Because the dollar amount is uncontested, the judgment should reflect the specific amount of $31,-199.03 as compensatory damages.

#### 2. *Incidental Damages*

Plaintiffs assert that the jury was confused in its award of $9,361.10 as incidental damages in that this amount exceeded the alleged damages specified in the jury charge. This aspect of the jury's verdict, however, may only be disturbed if there was no substantial evidence to support it. *Sentilles v. Inter-Caribbean Shipping Corp.,* 361 U.S. 107, 108, 80 S.Ct. 173, 174, 4 L.Ed.2d 142 (1959); *Compton v. Lucken-*

---

7. The Supreme Court has held that a party need not be the intended victim in order to suffer damages as a result of RICO. *American National Bank & Trust Co. v. Haroco, Inc.,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Furthermore, a criminal conviction is not a prerequisite to a claim under civil RICO. *See Sedima, S.P. R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 3281, 87 L.Ed.2d 346 (1985). However, felony conduct must be proved to the civil jury by a preponderance of the evidence. *Id.* at 3282.

*bach Overseas Corp.*, 425 F.2d 1130, 1133 (2d Cir.), *cert. denied*, 400 U.S. 916, 91 S.Ct. 175, 27 L.Ed.2d 155 (1970). Here, there is ample evidence in the record to support the jury's award. Therefore, plaintiff's motions for judgment n.o.v. and for a new trial on the issue of incidental damages is denied.

### C. *Fraud Damages*

The jury awarded defendant $8,504.00 as damages for fraud. *See* Special Verdict form at ¶ 19. Plaintiffs again claim that the jury was confused in awarding this amount. Plaintiffs further contend that the award is duplicative.

The jury was instructed that defendant's damages for fraudulent misrepresentation would be the expenses he incurred reduced by amounts received upon resale of the boat and the fair market value of the use of the boat. Several of the items included in this measure of damages are concededly applicable to contract damages. Nonetheless, there is ample evidence in the record to support the jury's award of $9,361.00 for breach of contract damages and $8,504.00 as damages flowing from fraudulent misrepresentations.[8]

When deciding a judgment n.o.v., a court cannot assess the weight of the evidence or the credibility of the witnesses. *Mattivi v. South African Marine Corp.*, *"Huguenot"*, 618 F.2d 163, 167–68 (2d Cir.1980). Judgment n.o.v. may only be granted if there is a complete absence of evidence supporting the verdict. *Id.* Here there was certainly ample evidence in the record to support the jury's award of damages.

### II. CONCLUSION

For all the reasons set forth herein, it is hereby ORDERED that the Judgment en-

tered on April 11, 1986 be amended in that the $1,500.00 awarded on the RICO claim be set aside.

It is further ORDERED that defendant's award of relief from any and all commitments to Chemical Bank as compensatory damages for breach of contract be resettled to indicate a specific award of $31,-199.03.[9]

Plaintiffs' motion for judgment n.o.v. with respect to defendant's awards of incidental damages for breach of contract and damages for fraudulent misrepresentation is denied.

Plaintiffs alternative motion for a new trial is also denied

SO ORDERED.

---

8. The evidence at trial revealed that Marauszwski paid $6,772.20 in mortgage payments to Chemical Bank, $7,554.00 in post-delivery maintenance, approximately $1,000.00 in outstanding dock charges, $2,668.88 in arrears payments to the bank, $904.00 for insurance and $275.00 in attorneys' fees. See Plaintiffs' trial exhibits 62, 67, 68 and 71. These figures closely approximate the sum of the two damages awards.

9. Plaintiff seeks prejudgment interest on this amount from March 23, 1984. However the $31,199.03 computed by Chemical Bank, and agreed to by the parties, included interest. Therefore, a further award of interest is denied.