Samuel DEL VALLE, Plaintiff,

v.

MARINE TRANSPORT LINES,
INC., Defendant.

Civ. No. 83–0580(PG).

United States District Court,
D. Puerto Rico.

March 7, 1984.

As Amended March 19, 1984.

**574**

Harry A. Ezratty, San Juan, P.R., for plaintiff.

William A. Grassam, David C. Indiano, Jimenez & Fuste, San Juan, P.R., for defendant.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This case is before the Court upon defendant's motion for summary judgment, filed on December 15, 1983. An opposition to this motion was filed by plaintiff on January 5, 1984, and defendant replied on January 18, 1984. Plaintiff then filed a reply to defendant's reply on January 30, 1984. For the reasons stated below, defendant's motion will be granted.

Defendant's motion sets forth three grounds why summary judgment should be entered in its favor. First, it asserts that plaintiff's alleged condition pre-existed his service aboard defendant's vessel. Second, it states that plaintiff had previously issued a complete release for the alleged injuries and condition. Finally, it adds that whatever injury the plaintiff may have sustained is not what the complaint seeks to remedy.

Plaintiff filed his opposition without any affidavits to refute defendant's presentation of the facts. In essence, plaintiff argues that the scope of the release is limited to a back injury sustained in 1978 and that the task being performed by plaintiff at the time of the alleged injury required more than one man.

Our determination whether to grant or deny defendant's motion for summary judgment is guided by the following well-established legal principles. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Hahn v. Sargent*, 523 F.2d 461 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), the Court of Appeals for the First Circuit explained that Rule 56(c) sets forth a bifurcated standard to govern summary judgment. A party opposing summary judgment must establish the existence of an issue of fact which is both "material" and "genuine" to defeat the motion. First, "a material issue is one which affects the outcome of the litigation," *Hahn, supra*, at 464. Second, to be "genuine" for Rule 56 purposes, "a material issue must be established by 'sufficient evidence supporting the claimed factual dispute ... to require a jury or judge

to resolve the parties' differing versions of the truth at trial.' " *Id. See also, Maiorana v. MacDonald,* 596 F.2d 1072 (1st Cir. 1979); *Salgado v. Piedmont Capital Corp.,* 534 F.Supp. 938 (D.P.R.,1981). Moreover, in determining whether summary judgment is appropriate, a court must "look at the record . . . in the light most favorable to . . . the party opposing the motion . . . ." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Also, "the Court must indulge all inferences favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Further, "these rules must be applied with recognition of the fact that it is the function of summary judgment, in the time hallowed phrase, 'to pierce formal allegations of facts in the pleadings,' *Schreffler v. Bowles,* 153 F.2d 1, 3 (10th Cir.1946), and to determine whether further exploration of the facts is necessary. *Briggs v. Kerrigan,* 431 F.2d 967, 968 (1st Cir.1970)." *Hahn, supra,* at 464.

After a careful review of all the documents submitted and the record as a whole, we find that all material facts have been established and that there is no dispute. Plaintiff is a seaman. He has worked for defendant since at least as early as February 1978. In October of 1981, plaintiff claims to have suffered an injury to his right hand when dragging a chain block over a metal grating while on board the "SS ALASKAN", a vessel owned and operated by the defendant. A complaint was filed in this Court on March 28, 1983. In essence, plaintiff del Valle alleges in his complaint that due to defendant's negligence and to the unseaworthy condition of defendant's vessel, he sustained injuries to his *right* hand, as well as an aggravation of a pre-existing, nondisabling condition, which affected both of his hands. The complaint was once amended and continues to allege injury to plaintiff's right hand. Because of our conclusion that the record

in this case reveals no genuine issue of material fact, the defendant, Marine Transport Lines, Inc., is entitled to judgment as a matter of law.

▪ We begin our examination of this case by looking at the allegations in the complaint with respect to an injury to plaintiff's *right* hand, and we note the utter lack of consistency between the pleadings and the proof. As we stated earlier, plaintiff's original complaint alleged injuries to his *right* hand. Plaintiff's amended complaint still alleges an injury to his right hand. In his deposition of October 6, 1983, however, plaintiff categorically stated that he did *not* injure his right hand. (Defendant's Exhibit A, at 32–34). Plaintiff, in his opposition to defendant's motion, has done nothing to explain the obvious discrepancy between the complaint and the proof,[1] although said discrepancy was pointed out by the defendant in its motion for summary judgment as requiring dismissal of the complaint for failure to state a claim upon which relief could be granted. We agree with the defendant that this inconsistency is fatal to plaintiff's case since plaintiff would not be entitled to damages for injuries to his *right* hand when he himself has admitted that only his *left* hand was injured. This alone would seem sufficient to grant defendant's motion for summary judgment and is characteristic of the discrepancies in plaintiff's case. However, this is not the only ground on which we base our grant of summary judgment in favor of defendant.

▪ Next, we examine the events leading to the signing of the release. In February 1978 plaintiff claimed to have suffered a fall while in defendant's employ, injuring his left hand, wrist, elbow, shoulder and back. In addition, plaintiff claimed that the alleged fall aggravated certain unspecified, pre-existing, nondisabling injuries. *See,* Complaint in Civil Case No. 78–1695 and plaintiff's deposition of January 24,

---

**1.** In fact, in his opposition, plaintiff continues to state that he suffered injuries to his *left* thumb. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, at page 1).

1979, Defendant's Exhibits to Reply Motion. These documents show that there is no merit to plaintiff's assertion that he only sued for back injuries in 1978. Civil Case No. 78–1695 was eventually settled and the settlement was approved by Honorable Judge Robert A. Grant on February 12, 1980. As a result, plaintiff signed a full release on February 1, 1980, following the advice of his counsel, and received $20,-000.00 in consideration for said release.[2] (Defendant's Exhibit B)

The validity of the release is unquestioned by either party. The language of the release specifically covers any and all injuries that may have been caused or aggravated by the fall, whether plaintiff was aware of them or not. In short, the release is a standard form which, on its face, is clear, and plaintiff does not contend that he did not understand it when he signed it nor that he was under any duress at the time. Instead, plaintiff argues in his motion in opposition that the 1980 release does not cover the condition affecting his hands, even assuming that said condition pre-dated the signing of the release. Plaintiff claims that the release covers *only* the back injury sustained as a result of the accident in 1978.

At first glance, it appears that there might be an issue of fact as to whether the alleged condition pre-dated or was caused by the accident in 1978, and, if so, whether it was covered by the 1980 release. If it is true that that condition was caused or aggravated by the accident in 1978, then we would have to conclude that the condition was covered by the 1980 release. However, we find that even if there were such an issue of fact, it is *not* determinative in

the case now before us. Our finding is based on our conclusion, after an examination of the record, that plaintiff's condition was neither caused nor aggravated by the accident in 1981 which gave rise to this case.

Plaintiff's own medical records show that, beginning at least as early as 1978, plaintiff began suffering numbness in both hands and his distal forearms.[3] (Defendant's Exhibits D, E, and F). This condition persisted and was eventually diagnosed as Carpal Tunnel Syndrome on or about April 28, 1980. Both hands were treated for this condition from 1978 to 1981. In his deposition testimony, plaintiff conceded that the treatment was not working and that he was scheduled to undergo corrective surgery on both hands.[4] (Plaintiff's Deposition of October 6, 1983, at 39–40; Defendant's Exhibit A). Plaintiff in effect admitted that his condition of Carpal Tunnel Syndrome preexisted the alleged incident of October 1981. *See,* pretrial stipulation as noted by U.S. Magistrate Castellanos in his Pretrial Conference Report of November 23, 1983. Furthermore, plaintiff's own doctor has stated that he believes the condition is work related because as part of his job plaintiff "has to turn heavy valves with his hands." (Note of Dr. Isales of October 9, 1981; Defendant's Exhibit M). Turning valves, however, has nothing to do with getting the chain block caught in the grating.

Besides his attempt to limit the scope of the release, plaintiff also attempts to circumvent the effect of the release by arguing that the alleged injury aggravated plaintiff's condition. When we look at the

---

**2.** Plaintiff was represented by the same counsel in the 1978 case as in the instant case.

**3.** In fact, on or about April 28, 1980, plaintiff's treating physician, Dr. Ramón Isales, wrote in his consultation report that plaintiff had been suffering from numbness of both hands for about two to three years. Thus, it would appear that Samuel del Valle may have been suffering from the alleged condition since at least as early as April 1978, or perhaps even earlier, that is, April 1977. *See,* Defendant's Exhibit H. In either case, it is evident from plaintiff's medical

record that the symptoms of his condition were detected before the signing of the February 1, 1980, release.

**4.** When the condition plaintiff was suffering from was diagnosed as Carpal Tunnel Syndrome, Dr. Isales recommended a treatment based on steroid injections. At that time, he also recommended that if the plaintiff did not respond to the injections treatment, or if he responded but only temporarily, that surgery was indicated. *See,* Defendant's Exhibit H.

alleged facts in the light most favorable to the plaintiff in order to determine how to rule on defendant's motion for summary judgment, we do not turn off the lamp to blind ourselves to plaintiff's own admissions. Here, plaintiff had been told before the accident that his condition required operation on both hands if he failed to respond to the injections treatment. This much has been admitted by the plaintiff. The medical records show the plaintiff was in fact not getting any relief from the conservative injections treatment. (Defendant's Exhibit K). Moreover, there is no indication in the record that the alleged accident in any way changed this plan nor caused any change in treatment. In fact, plaintiff himself admitted that his doctor did *not* change the treatment after the accident or as a result thereof. (Plaintiff's Deposition of October 6, 1983, at 39–40); Defendant's Exhibit A). Rather, Dr. Isales decided to operate on plaintiff's hands because the treatment with injections was not working, not because the accident had aggravated plaintiff's condition. Furthermore, plaintiff states in his deposition that he has not seen a doctor since the operations on his hands (Defendant's Exhibit A, at 42). There is no indication in the record that the operations were anything but successful. Thus, we can only conclude from the above that the condition was not caused or aggravated by the alleged incident of October 1981. Hence, whether or not the condition was covered by the 1980 release, is immaterial to the case.

We now turn to the legal underpinnings in this case. Plaintiff's first cause of action is grounded on Section 688 of Title 46 of the United States Code (the Jones Act). In order to recover on a Jones Act cause of action, a plaintiff must allege and show that the employer was negligent and that this negligence contributed to plaintiff's injury. *See generally, Bennett v. Perini Corporation*, 510 F.2d 114, 117 (1st Cir.1975); *Peymann v. Perini Corporation*, 507 F.2d 1318, 1324 (1st Cir.1974), *cert. den.*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975); M. Norris, *The Law of Maritime Personal Injuries*, 163–168 (3rd Ed.1975). For the employer to be liable under the Jones Act it is not sufficient that an accident has occurred. *Caldwell v. Manhattan Tankers Corp.*, 618 F.2d 361, 363 (5th Cir.1980). Rather, it is an indispensable element of recovery under the Jones Act that the employer be at "fault". *See Kernan v. American Dredging Co.*, 355 U.S. 426, 432, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958). To be at fault the employer must have breached some duty of care so as to have created a dangerous condition. *See, e.g., Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir.1975). Also, to be negligent, the employer must have had knowledge of the problem that created the dangerous situation. *Perry v. Morgan Guaranty Trust Co. of New York*, 528 F.2d 1378, 1380 (5th Cir.1976); *Rice v. Atlantic Gulf & Pacific Co.*, 484 F.2d 1318, 1320 (2d Cir.1973). Finally, it is clear that plaintiff has the burden of proving that the defendant was negligent and that the defendant's negligence caused plaintiff's injury. *Traupman v. American Dredging Co.*, 470 F.2d 736 (2d Cir.1972); *In re Atlass' Petition*, 350 F.2d 592 (7th Cir.1965), *cert. denied*, 382 U.S. 988, 86 S.Ct. 556, 15 L.Ed.2d 476 (1966).

In the case at bar, plaintiff alleged no facts to indicate that defendant did not exercise due diligence in providing the crew with a safe place to work. Furthermore, plaintiff's own version of how the accident occurred, as emerges from his deposition, confirms this absence of negligence. Plaintiff was performing a task that he had done before as an experienced seaman putting away tools. No one had instructed him to put the tools away but he did so as "part of the continuing work". (Deposition at 27, Defendant's Exhibit A). The tools were not defective and there is no indication in the record that the task required more than one person. Plaintiff did not state in his deposition that the task required more than one person nor bothered to attach any affidavit to his motion in opposition contesting that it did. Neither party can rest exclusively on its pleadings to show that facts are contested when con-

fronted by a motion for summary judgment. *Morton v. Browne,* 438 F.2d 1205, 1206 (1st Cir.1971); *Doctors Hospital, Inc. v. Recio,* 383 F.Supp. 409, 411 (D.P.R.1974); *United States v. Trans-World Bank,* 382 F.Supp. 1100, 1101–1102 (C.D.Cal.1974); 10A Wright, Miller & Kane, *Federal Practice and Procedure,* Section 2727, at 133–137 (1983). *Cf. Stepanischen v. Merchants Despatch Trans. Corp.,* 722 F.2d 922, 929 (1st Cir.1983); F.R.Civ.P. 56(e). Specifically, the Court of Appeals for the First Circuit has recently stated that "the allegations of a complaint do not constitute substantial evidence that raises a genuine issue of material fact." *Cleary v. Perfectune, Inc.,* 700 F.2d 774, 778 (1st Cir.1983) (citing *Hahn v. Sargent, supra* ).

Furthermore, it was plaintiff's own decision to drag the chain block over the metal grating rather than pull it up over his shoulder. If plaintiff was injured, it is clear that no negligent act on the part of defendant had anything to do with the accident. *See, e.g., Peymann v. Perini Corporation, supra,* at 1322.

■ Plaintiff's second cause of action is grounded on the theory of unseaworthiness. The unseaworthiness claim is separate from the Jones Act claim although similar or identical proof is often offered. It should be understood, however, that liability based upon unseaworthiness is distinct from liability based upon negligence. The Supreme Court of the United States has repeatedly emphasized that "unseaworthiness is a *condition,* and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it." *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971) (emphasis in original).

■ General maritime law imposes a duty upon shipowners to provide a seaworthy vessel. *Carlisle Packing Company v. Sandanger,* 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922). Said duty is absolute and is independent from the duty of reasonable care imposed by the Jones Act. *Mitchell v.* *Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

■ A finding of unseaworthiness, however, does not mean automatic liability. Under this doctrine, a defendant is not "obligated to furnish an accident-free ship." *Mitchell, supra,* at 550, 80 S.Ct. at 933. "The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Id.* In every case, the plaintiff "(m)ust in some way show a causal connection between his injury and some omission or commission by the shipowner or a condition which renders the ship unseaworthy." *Caldwell v. Manhattan Tankers Corporation,* 618 F.2d at 363. *See also, Heath v. Matson Navigation Co.,* 333 F.Supp. 131, 135 (D.Haw.1971).

■ There is no allegation in the complaint of any particular condition of the ship which may have caused the alleged injury. Moreover, in his deposition, plaintiff points to no defect in any of the equipment on board the "SS ALASKAN" which may have caused the accident. Thus, in this respect, there is no allegation of any "condition" in the vessel which would have rendered it unseaworthy nor of any defective equipment or equipment negligently maintained which might have *caused* the alleged accident and resulting injuries.

Furthermore, plaintiff was working by himself and, thus, there was no negligence on the part of any fellow seaman. Again, the record does not show that the task required more than one seaman. Although plaintiff makes the bald conclusory allegation that there is an issue of fact as to whether he should have been given assistance, there is no indication in the record that more than one seaman was required. On the record before the Court, this is sheer speculation. *See, American Inter-*

national Insurance Co. v. Vessel S.S. FORTALEZA, 585 F.2d 22 (1st Cir.1978).

Finally, even if we assume an unseaworthy condition and/or negligence by defendant, there is no allegation of any causal connection between the condition of Carpal Tunnel Syndrome and the alleged injury to one hand. First, the condition was affecting both hands. In this regard, it is interesting to note that plaintiff claims in the complaint that he received injuries to his right hand,[5] which purportedly aggravated his pre-existing condition. After the accident, however, plaintiff decided to have *both* his hands operated on by Dr. Isales although one of them had not been injured in the accident. Second, the condition was already slated to be treated before the alleged accident in the manner in which it was treated after the alleged accident. Absent the required causal connection, both claims must fall as a matter of law. Although causation is generally a question of fact for the jury, the allegation on its face may not be so frivolous and obviously impossible so as to fall short of presenting a genuine issue of material fact. If such a situation exists, as it does in the instant case, there is no question for a jury and summary judgment is proper.

In short, this case is ripe for summary judgment for a variety of reasons. First, plaintiff testified in his deposition that he did not injure his right hand. Second, plaintiff admitted the condition preexisted the alleged injury, and plaintiff's own testimony established that there was no aggravation. Third, plaintiff admitted that there was no defective piece of equipment that in any way caused the alleged injury. Finally, plaintiff has failed to present any evidence or argument as to the causal relationship between the alleged incident and the admitted condition raising a question meritorious of resolution by jury.

WHEREFORE, based on the conclusions discussed herein, defendant is entitled to judgment as a matter of law since plaintiff

has presented no genuine issue of material fact. Thus, defendant's motion for summary judgment is hereby GRANTED.

The clerk shall enter judgment accordingly.

IT IS SO ORDERED.

---

5. As to this claim, the record has shown a flagrant inconsistency between the pleadings and the proof. Plaintiff del Valle has not even attempted to explain this inconsistency. *See, supra,* at page 575.