**Miodrag PLESHA, et al., Plaintiffs**

**v.**

**M/V INSPIRATION, et al., Defendants.**

**Civil No. 04–1764(SEC).**

United States District Court,
D. Puerto Rico.

Feb. 22, 2006.

Vladimir Mihailovich–Nikolich, San Juan, PR, for Plaintiffs.

Jose Ramon Rivera–Morales, Manolo T. Rodriguez–Bird, Jimenez, Graffam & Lausell, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court is Defendants' motion for summary judgment (Dockets ## 42 & 43). Plaintiffs have filed an opposition (Dockets ## 50–52). Defendants replied (Docket ## 59 & 60) and Plaintiffs sur-replied (Docket # 66). After carefully examining the parties' arguments, the case record and the applicable law, Defendants' motion for summary judgment will be **GRANTED** in its entirety.

## Factual Background

Plaintiffs in the instant case are Miodrag Plesha, his wife, Sheila Concepción–Ortíz, and the Plesha–Ortíz Conjugal Partnership. Defendants are M/V Inspiration, M/V Fascination, M/V Destiny [1] and Carnival Cruise Lines, Inc. ("Carnival Cruises"). In August of 1998, Co-plaintiff Plesha began employment as an on-board busboy with Co-defendant Carnival Cruises (Docket # 11 at ¶ 15 & Docket # 42 SUF No. 3). Thereafter, in June 1999 he was promoted to the position of restaurant waiter and worked on and off as a restaurant waiter with Carnival Cruises until the year 2001, when he signed off in August of 2001 (Docket # 11 at ¶¶ 16–17 & Docket # 42 SUF No. 4).

During the course of his employment as a restaurant waiter with Carnival Cruises aboard three (3) different ships, Co-defendants *in rem* in this case, Plaintiffs claim, that Co-plaintiff Plesha was required to "repeatedly and continuously [carry] an extremely heavy twenty-course tray [,]" while "repeatedly [having to] squat, bend and crouch while carrying his heavy burden through the narrow passageways of the vessels" (Docket # 11at ¶¶ 19–20). Therefore, as a result of the execution of said physically demanding movements, Plaintiffs claim that Co-plaintiff Plesha suffered "pain in both knees, as well as on his right shoulder and elbow." (Docket # 11 at ¶ 22). Plaintiffs further claim that although Co-plaintiff Plesha reported this condition to his supervisors and the ship's doctors in numerous occasions, he was not treated properly for the same (Docket # 11 at ¶ 24). Furthermore, Plaintiffs allege that while on shore leave due to his unbearable knee pain, Co-plaintiff Plesha was underpaid for maintenance and cure benefits by Co-defendant Carnival Cruises (Docket # 11 at ¶ 28).

Therefore, Plaintiffs have filed suit against Defendants claiming relief for: (1) Defendants' negligence in forcing Co-plaintiff Plesha to carry an unusually heavy tray through the narrow passageways of the ships, failing to provide adequate medical attention and failing to provide a safe work environment (Docket # 11 at ¶¶ 35–42); (2) the Carnival Cruises vessels in which Co-plaintiff Plesha worked were unseaworthy due to their narrow passageways and low ceilings (Docket # 11 at ¶¶ 43–46); (3) Defendants' failure to make the required payments for maintenance and cure benefits, and unearned wages (Docket # 11 at ¶¶ 47–53); and (4) emotional damages allegedly suffered by Co-plaintiff Concepción–Ortíz as a result of her husbands' pain and suffering (Docket # 11 at ¶¶ 54–56).

---

1. Plaintiffs have filed suit against M/V Inspiration, M/V Fascination and M/V Destiny *in rem*. *See* Docket # 11. However, as explained herein only Plaintiffs' claims for maintenance and cure benefits and unearned wages, as well as that for unseaworthiness under the general maritime law are actionable against the vessels *in rem*.

## Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court·may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Prop.,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón,* 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly

by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

**Applicable Law and Analysis**

Defendants have moved for dismissal of all of Plaintiffs' claims on the following grounds: (1) Defendants paid Co-plaintiff Plesha the full maintenance and cure benefits owed; (2) Co-plaintiff Plesha was paid all the unearned wages owed to him at the time of his discharge; (3) Co-plaintiff Plesha's knee condition was not a result of his work as a restaurant waiter with Carnival Cruises nor negligence on the part of Defendants; (4) Plaintiffs have provided no evidence of the Carnival Cruises' vessels' alleged unseaworthiness; and (5) Co-plain-

tiff Concepción–Ortíz does not have an actionable claim for damages under applicable maritime law (Docket # 43). We will address each of these arguments in this same order.

**1. Maintenance and Cure Benefits and Unearned Wages**

 "Maintenance" is the right of a seaman to food and lodging should he fall ill or become injured while in the service of a ship. 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 6–28 at 376–77 (4th ed.2004). "Cure" is the right to necessary medical services. *Id.* A seaman is entitled to maintenance and cure benefits until he reaches the point of "maximum recovery." That is, until he becomes fit for work, it appears that treatment cannot improve his condition/illness any further, or until he is declared permanently incapacitated. *Id.* § 6–28 at 380 & § 6–33 at 393. Likewise, an injured seaman has a right to the payment of any unearned wages for the period from the onset of the injury or illness to the end of the voyage or employment contract, as if he had been able to complete the contractual terms of his employment. *Id.* § 6–29 at 381–82. *See also Blainey v. Am. Steamship Co.*, 990 F.2d 885, 887 (6th Cir.1993). The employer's duty to pay for maintenance, cure and unearned wages is without regard to fault, negligence or causation. *Id.* § 6–28 at 380; *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 527–28, 58 S.Ct. 651, 82 L.Ed. 993 (1938); *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 454 (1st Cir.1996); *Alier v. Sea Land Service, Inc.*, 465 F.Supp. 1106, 1111 (D.P.R.1979). An action to recover for maintenance, cure and/or unearned wages may be brought against the employer/shipowner or against the vessel *in rem*. Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty, 286 (2nd ed.1975). Furthermore, the right of a seaman to recover for mainte-

nance, cure and unearned wages cannot be waived by contract. *Blainey*, 990 F.2d at 887 ("the duty to provide maintenance, cure, and unearned wages cannot be entirely abrogated by contract").

### a. Maintenance and Cure

■ In the instant case, Plaintiffs aver that initially Co-plaintiff Plesha received approximately $350 for maintenance and cure, which was substantially lower than his average income while working on the ship, and that a year into his leave his maintenance and cure was raised to $700, retroactively (Docket # 11 at ¶ 28). Plaintiffs then claim that Defendants owe Co-plaintiff Plesha payments for maintenance and cure in an amount equal to what he was earning while working aboard the ships; allegedly around $3,000 (Docket # 11 at ¶ 51). Defendants, on the other hand, contend that they paid Co-plaintiff Plesha maintenance and cure from August 2001 through June 2004 in an amount stipulated in the Seafarer's Manual which Co-plaintiff Plesha signed with Carnival Cruises, and that, once he attained maximum medical improvement, Defendants discontinued payment of these benefits (Docket # 43 at pp. 9–10).

At this juncture, it is undisputed that from August 2001 until June 2004, Defendants paid Co-plaintiff Plesha a total of $25,225.00 for maintenance and $22,232.85 for cure benefits (Docket # 42 SUF No. 35). Defendants then contend, and Plaintiffs do not dispute, that the amounts finally paid, at least after the application of the retroactive payment, for maintenance and cure were in accordance with the agreement signed by Co-plaintiff Plesha, the Seafarer's Manual ¶¶ 7–8 (Docket # 42, Ex. P). It is also uncontested that Dr. Grovas–Badrena testified that by October 1, 2002 Co-plaintiff Plesha had reached "maximum medical improvement." (Dock-et # 42, Ex. Q). Then, as posed by Plaintiffs, the question is whether the payments made by Carnival Cruises for maintenance and cure were enough as a matter of law.

Albeit in a somewhat convoluted manner, Co-plaintiff Plesha makes two arguments in support of his contention that he should have received more money for maintenance and cure: (1) a case by the Eleventh Circuit, *Flores v. Carnival Cruise Lines*, 47 F.3d 1120 (11th Cir.1995), allegedly supports his conclusion that Carnival Cruises could not, by agreement, modify or limit his right to maintenance and cure benefits; and (2) Carnival Cruises violated the Seafarer's Manual by paying Co-plaintiff Plesha less than what was stipulated therein. Let's see.

Plaintiff in *Flores* was a seaman who claimed that, upon becoming injured, he was entitled to payment of unearned wages which had to include the tips he could have earned had he been able to complete his employment contract. *Id.* The Eleventh Circuit agreed with the plaintiff and mandated that unearned tips be included in the calculation of unearned wages. *Id.* The Court reasoned that although the employment contract did not guarantee any particular amount of tips, the custom and practice of the parties, as well as their expectations, was that the majority of the plaintiff's salary would come from the tips he would receive. However, while the *Flores* case stands for the proposition that a seaman's right to maintenance, cure or unearned wages cannot be abrogated by contract, it does not hold that a previous employment contract cannot serve to modify or limit the seaman's right to said payments. In fact, as properly argued by Defendants, in a later decision, the Eleventh Circuit held that when there is a collective bargaining agreement or a union contract, maintenance and cure benefits may be limited per

previous agreement. *Cabrera Espinal v. Royal Caribbean Cruises, Ltd.*, 253 F.3d 629, 631 (11th Cir.2001)("the remedies provided for in maritime law may be altered although not abrogated by collective bargaining agreements."). Furthermore, the First Circuit has joined the Eleventh Circuit by holding that a daily maintenance and cure rate previously agreed upon in a collective bargaining agreement is binding on the parties. *See Macedo v. F/V Paul & Michelle*, 868 F.2d 519, 521–22 (1st Cir. 1989). Other circuits have gone down this same route. *See e.g. Blainey*, 990 F.2d at 887 (stating that "a seaman's right to these remedies can be modified and defined by contract."); *Baldassaro v. United States*, 64 F.3d 206, 212 (5th Cir.1995) (discussing similar holdings in the First, Sixth and Ninth Circuits and holding that a collective bargaining agreement may set the rate at which maintenance would be paid by the employer, modifying a seaman's right to maintenance); SCHOENBAUM § 6–32 at 389–90. Accordingly, we find that Plaintiffs' argument that an agreement between himself and Carnival Cruises stipulating the maintenance and cure rate to be received in the case of an injury was contrary to law, lacks merit. This is especially so in light of the fact that Plaintiffs have provided no evidence that the Seafarer's Agreement or the Seafarer's Manual were not fairly and freely negotiated between the parties.

Plaintiffs' second argument, that Carnival Cruises breached the employment contract by paying less than the stipulated amount, is also unfounded. Plaintiffs have not presented any evidence that Carnival Cruises paid less than the stipulated amount, that is, $12 per day for maintenance and an amount equivalent to $350 per month, every two (2) weeks for a maximum period of sixty (60) days during any twelve (12) month period for each day that Co-plaintiff Plesha was not fit for duty

or had not reached maximum medical cure (Docket # 42, Ex. P). Nor have Plaintiffs presented any evidence to dispute Defendants' position, evidenced by Ms. Martha Zayas', Carnival's Senior Claims Representative, verified statement that it was as a result of their review of Co-plaintiff Plesha's costs of living that they decided to raise his compensation for maintenance and cure to $25 per day and apply it retroactively (Docket # 60, Ex. A). Absent any evidence on this regard, we must reject Plaintiffs' argument as it is well settled that unsupported allegations are insufficient to shoulder the burden of summary judgement. For the reasons stated above, Defendants' motion for summary judgment as to Plaintiffs' claim for alleged overdue payment of maintenance and cure benefits is **GRANTED**. Plaintiffs' claim for maintenance and cure benefits will be **DISMISSED WITH PREJUDICE.**

### b. Unearned Wages

Next, Plaintiffs argue that Defendants owe Co-plaintiff Plesha unearned wages "that he would have received in the future but for the injuries he sustained." (Docket # 11 at ¶ 49). To the best of our understanding, Plaintiffs' argument is that Defendants should have paid Co-plaintiff Plesha unearned wages for ten (10) months (the maximum length of the employment contract) instead of for three (3) months (until the end of the voyage). *See* Docket # 42, Ex. O. Defendants sustain that having paid Co-plaintiff Plesha unearned wages up to August of 2001, when he signed off from the ship after the end of the voyage, they complied with the Seafarer's Agreement, as well as the applicable law (Docket # 42. Exs. A & O). We agree.

The Seafarer's Agreement unambiguously states that "if Seafarer becomes ill or injured, his/her entitlement to un-

earned wages shall extend only to the end of the voyage from which Seafarer signs off articles." (Docket # 42, Ex. O). Plaintiffs have not contested that Co-plaintiff Plesha signed off on August of 2001 when the voyage concluded (Docket # 42 SUF No. 34). It follows that Defendants' payment of unearned wages until August of 2001 complied with the terms and conditions of the Seafarer's Agreement signed by Co-plaintiff Plesha. As such, Plaintiffs' claim on this respect must fail. *Blainey*, 990 F.2d at 891–92 (holding that absent a collective bargaining agreement which extends the employment period past the end of a particular voyage, a seaman is entitled to unearned wages until the end of the voyage). Accordingly, Defendants' motion for summary judgment is **GRANTED** and Plaintiffs' claims as to unearned wages will be **DISMISSED WITH PREJUDICE.**

## 2. Negligence under the Jones Act

■■■ The Jones Act, in its pertinent part, provides that "[a]ny seaman who [ ] suffer[s] personal injury in the course of his employment may [ ] maintain an action for damages at law" against its employer. 46 U.S.C.App. § 688 *et seq.* This personal injury action is distinct and separate from an action seeking payment of maintenance and cure benefits or unearned wages. *Ferrara*, 99 F.3d at 452. That is, a plaintiff may seek compensation for maintenance and cure while at the same time seeking damages under the Jones Act. This action, however, requires a showing that the employer was negligent and that as a result of said negligence the employee (seaman) suffered an injury which entitles him to damages. *Del Valle v. Marine Transport Lines, Inc.*, 582 F.Supp. 573, 577 (D.P.R.1984); *Martinez v. Sea Land Service, Inc.*, 589 F.Supp. 841, 843 (D.P.R. 1984) (plaintiff has the burden of proving that the defendant was negligent and that the defendant's negligence caused plain-

tiff's injury). Therefore, aside from proving a defendants' negligence, a plaintiff needs to produce sufficient evidence that it was the defendant's negligence that caused his injury. Because this showing requires only "slight" evidence, plaintiff's burden on the causation requirement has been characterized as "very light" or "featherweight." *Poulis–Minott v. Smith*, 388 F.3d 354, 366 (1st Cir.2004) (liability exists if the employer's negligence contributed even in the slightest to the plaintiff's injury, conclusory allegations, improbable inferences and unsupported speculation are insufficient, notwithstanding); *Charles v. West Indies Transport*, 631 F.Supp. 1023, 1025 (D.P.R.1986); 1 Schoenbaum, § 6–22 at 350–51. Furthermore, an action pursuant to the Jones Act can only be brought against the employer and not against the vessels *in rem*. *Nahan v. Pan Am. Grain Mfg., Co., Inc.*, 62 F.Supp.2d 419, 425 n. 6 (D.P.R.1999); Gilmore & Black, Jr., 285.

Plaintiffs claim that Defendants' negligence caused Co-plaintiff Plesha to suffer arthritis on his knees, a permanent and degenerative condition. Plaintiffs blame Co-plaintiff Plesha's condition on having had to constantly carry an unusually heavy tray with meals and silverware; the working conditions at the vessels (e.g. narrow passageways and low ceilings); and the improper medical attention given to him while on board. To this end, Defendants counter that Co-plaintiff Plesha's claim should be dismissed as there is no proof of Defendants' negligence or that Co-plaintiff Plesha's condition was caused by said negligence.

■■■ Plaintiffs' first argument of negligence is that Defendants forced Co-plaintiff Plesha to constantly carry a tray with an unusually high number of plates and silverware, amounting to 40–50 pounds. To this end, Plaintiffs contend that there

was an express oral mandate from management that the waiters carry all the meals to be served to a given table at once and that once a waiter was assigned to a table he/she was not allowed to switch. Although Defendants deny the existence of this mandate or that a waiter could not switch tables (Docket # 42, Exs. B, C & D), Plaintiffs have provided two verified statements in evidence of the existence of said oral instruction; to wit, Co-plaintiff Plesha's and Mr. Renato Hrg's, who also worked as a waiter with Carnival Cruises. *See* Docket # 52, Exs. 1 & 2. However, even taking as true that an oral instruction to carry all meals at once existed, that a waiter could not switch tables, and that every meal entailed the serving of twenty (20) plates, Plaintiffs need to establish that Defendants' knew or should have known of the unsafe working condition in order for the Court to be able to infer negligence. "There must be some evidence that the owner of the ship knew, or, in the exercise of due care, should have known of the unsafe condition." *Havens v. F/T Polar Mist, U.S.C.G.*, 996 F.2d 215, 218 (9th Cir. 1993) (citations omitted); *Del Valle*, 582 F.Supp. at 577 (the employer must have knowledge of the problem that created the dangerous situation) (citations omitted).

Upon reviewing the record as a whole, we find, however, that Plaintiffs have failed to make such a showing. Plaintiffs submit that Defendants knew of the unsafe condition because Co-plaintiff Plesha complained to his supervisors. In support of this contention, Co-plaintiff Plesha has submitted his own verified statement and nothing else (Docket # 52, Ex. 1). In this verified statement, however, Co-plaintiff Plesha does not provide the Court with any specific information as to where, when and to whom he made these complaints. In fact, in his deposition Co-plaintiff Plesha could not even remember having complained at all before signing off the ship

(Docket # 42, Ex. F). These inconsistent statements without more, are simply insufficient as a matter of law to establish that Defendants knew or should have known of the unsafe condition. Especially, in light of the fact that Defendants have presented evidence that Co-plaintiff Plesha's supervisor does not remember receiving such complaints (Docket # 42, Ex. C), there is no evidence that anyone else has suffered an injury as a result of the weight carried by the waiters (Docket # 42, Exs. C, D & G), there is no evidence that anyone else ever complained of the alleged unsafe situation (Docket # 42, Ex. G) and that it remains uncontested that waiters could seek the help of the busboys in, at least, carrying dirty plates and silverware back to the kitchen (Docket # 42, Exs. B, C & D). Therefore, discovery having ran its course and Plaintiffs' having been unable to come up with any evidence that Defendants knew or should have known that waiters were exposed to injury as a result of carrying heavy trays on a daily basis, Plaintiffs' foregoing argument of negligence must fail.

Next, Plaintiffs contend that Defendants were negligent because of the narrow passageways, low ceilings, and small doorways that Co-plaintiff Plesha had to pass while carrying the tray filled with plates. Again, other than Co-plaintiff Plesha's own bare allegations that these working conditions were inappropriate or unsafe, Plaintiffs have not presented any evidence on this behalf. Plaintiffs simply rely on two (2) pictures showing Co-plaintiff Plesha carrying his tray through the doors of the ship and squatting to put down the tray (Docket # 52, Ex. 15). However, these pictures, without more, do not evidence that the narrow passageways, small doorways and low ceilings created an unsafe working environment or, more importantly, that Defendants knew or should have known of

the dangerousness that their kitchen and dining room area posed to waiters. The record is also devoid of any evidence that the passageways, doorways and ceilings of the ships fell below those acceptable to the cruise ship industry. *See* Docket # 42, Exs. B, C & D, establishing that the kitchen and dining room area of the Carnival Cruise ships is in line with the cruise ship industry. Therefore, absent any evidence of negligence on the part of Defendants we must reject Plaintiffs' argument on this behalf.

A word is necessary as to the element of causality in Co-plaintiff Plesha's Jones Act claim. Plaintiffs' expert, Dr. Grovas–Badrena, has opined that Co-plaintiff Plesha's job as a waiter "fostered the advent" of his knee condition due to "his carrying heavy loads seven (7) days a week, sixteen (16) hours a day in ten (10) months contracts." (Docket # 19 at p. 10). Arguably, this report, albeit contradicted by Dr. Fernández who concluded that Co-plaintiff Plesha's knee condition was genetic and not caused by his job (Docket # 42, Ex. J)[2], creates an issue of fact as to the element of causality in Co-plaintiff Plesha's Jones Act claim. However, because we have concluded that Plaintiffs have failed to establish that Defendants were negligent, an issue of fact as to causality need not dissuade us from concluding that Plaintiffs' Jones Act claim fails as a matter of law. The Jones Act requires that a plaintiff evidence both: a defendants' negligence and that said negligence caused his injury. Failure on the first element dooms Plaintiffs' cause of action under the Jones Act. *See* GILMORE & BLACK, 377 ("The Jones Act plaintiff bears the burden of going forward with evidence on the essential elements of a negligence action: the existence of a duty; the negligent violation of the duty by defendant; and the causal relationship of violation to injury."); 1 SCHOENBAUM, § 6–22 at 345–49 (discussing a plaintiff's burden of proof as to negligence and causation in order to have an actionable claim under the Jones Act).

 Lastly, Plaintiffs claim that the medical attention received by Co-plaintiff Plesha onboard the ships by Defendants' doctors was inappropriate. Even assuming that Plaintiffs could prove that the medical treatment received by Co-plaintiff Plesha was negligent, this argument fails as there is absolutely no evidence, not even from Dr. Grovas–Badrena, Plaintiffs' expert witness, causally connecting Co-plaintiff Plesha's knee condition to the medical treatment received onboard. Although an action under the Jones Act only requires slight evidence of causality, something other than conclusory allegations is necessary. Sheer inferences and unsupported speculation are simply not enough. *See Poulis–Minott v. Smith*, 388 F.3d 354, 366 (1st Cir.2004). Per the foregoing discussion, Defendants' motion for summary judgment as to Co-plaintiff Plesha's Jones Act claim is **GRANTED** and Co-plaintiff Plesha's claim under the Jones Act will be. **DISMISSED WITH PREJUDICE.**

### 3. Unseaworthiness under the General Maritime Law

 Aside from an action for negligence under the Jones Act and an action for the payment of due maintenance, cure and unearned wages, a plaintiff may seek

---

**2.** The Court notes that of some relevance is the fact that Dr. Orlando Fernández evaluated Co-plaintiff Plesha per Plaintiffs' previous attorney's request in 2003. Plaintiffs had initially filed this action in 2003 (Civil No. 03–1833(JP)) and decided to voluntarily dismiss the same once Dr. Fernández informed them that he attributed Co-plaintiff Plesha's knee condition to genetics and not to his former employment as a waiter with Carnival Cruise. *See* Docket # 42, Ex. I.

to establish employer liability for injury suffered as a result of the unseaworthiness of the vessel. A ship is unseaworthy if it does not serve the need or purpose for which it is intended. The employer's responsibility on this respect is absolute and a finding of fault is unnecessary. That is, "a shipowner has an absolute duty to provide very member of his crew 'a vessel and appurtenances reasonably fit for their intended use.'" *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 199 (1st Cir.1980)(*quoting Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); *Cape Fear, Inc. v. Martin*, 312 F.3d 496, 502 (1st Cir.2002)) (a shipowner is strictly liable for damages resulting from a vessel's unseaworthiness). Therefore, regardless of whether the employer was negligent or not, if plaintiff proves that the vessel was unseaworthy and that it was this unseaworthiness that caused his injury, the employer is liable for damages. *Mitchell*, 362 U.S. at 550, 80 S.Ct. 926 (there "is a complete divorcement of unseaworthiness liability from concepts of negligence."). However, "the standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Id.* (citation omitted).

■ Unlike a claim under the Jones Act, however, the burden of proof for the plaintiff in this case is more stringent. That is, a plaintiff is required to prove that: (1) the vessel was not fit for its intended use, that it was unseaworthy, (2) he suffered an injury, and (3) the unseaworthy condition was the sole or proximate cause of the injury sustained. *Cape Fear, Inc. v. Martin*, 312 F.3d at 502 n. 10 (*quoting Ferrara*, 99 F.3d at 453); *Poulis–Minott*, 388 F.3d at 366 (citations omitted); *see also Gosnell v. Sea–Land Service, Inc.*, 782 F.2d 464, 467 (4th Cir.1986) (discussing the difference between the burden of proof for a Jones Act claim and that of a claim of unseaworthiness which requires that the unseaworthy condition be the "proximate or direct and substantial cause of the seaman's injury."); 1 Schoenbaum § 6–25 at 364. Liability attaches only if the plaintiff establishes that the unseaworthiness condition of the ship was the proximate cause of his injury. *Hubbard*, 626 F.2d at 199.

■ Plaintiffs' argument to this end is that the narrow passageways, small doorways, low ceilings and the distance between the kitchen and the tables to be served were defective conditions which made the ships unseaworthy. Although no evidence of negligence is necessary on this claim, Plaintiffs do have the burden of establishing, at least *prima facie*, that the working conditions of the ships were unseaworthy or not fit for their intended use. Plaintiffs' evidence on this respect: none. Again, Plaintiffs rely on unsupported allegations and two (2) pictures. There is no evidence showing that: (1) these conditions were different from those in other cruise ships; (2) any other employee/waiter complained of the ships' conditions; or (3) anyone else working as a waiter and carrying the same weight suffered an injury as a result of the ships' passageways, doorways or ceilings. We cannot speculate that because Co-plaintiff Plesha had to bend in order to pass through a door with a tray full of meals or that he had to squat to put the tray down, that the ship's premises were defective. Furthermore, as previously stated, Defendants have presented evidence in the form of verified statements that the conditions of the ships were in accordance with the cruise ships standards (Docket # 42, Exs. B, C & D). Absent any evidence to dispute this, we must find that even after the conclusion of discovery,

Plaintiffs have failed to present any evidence that the passageways, ceilings and doorways of the Carnival Cruise vessels were not reasonably fit for the intended use. Accordingly, Defendants' motion for summary judgment as to Co-plaintiff Plesha's claim of unseaworthiness is **GRANTED** and said claim will be **DISMISSED WITH PREJUDICE.**

### 4. Co-plaintiff Concepción–Ortiz's Claim for Damages

Lastly, Defendants argue that Co-plaintiff Concepción–Ortiz's claims should be dismissed since there is no actionable cause of . action for a spouses' emotional damages under applicable law. Plaintiffs concede to Defendants' argument but counter that Co-plaintiff Concepción–Ortiz's claim is one for mental anguish under Article 1802 of the Puerto Rico Civil Code. *See* Docket # 51 at p. 7. Notwithstanding, Defendants insist that the U.S. Supreme Court in *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), stands for the proposition that the remedies provided for under the Jones Act and the general maritime law, bar a spouse's right of recovery for non-pecuniary damages for her husband's injury brought under state law. *See e.g. Clancy v. Mobil Oil Corp.,* 906 F.Supp. 42, 46–48 (D.Mass.1995) (stating that allowing a state law claim for loss of consortium to a spouse of an injured seaman is inconsistent with maritime law and the Jones Act); 1 Schoenbaum § 6–14 at 320 n. 34 (stating that a majority of courts have decided that *Miles'* pecuniary bar is applicable to non-fatal injuries).

Defendants pose an interesting argument, which we do not need to address. Having dismissed Co-plaintiff Plesha's claim for failure to create a triable issue of fact as to Defendants' negligence nor as to the unseaworthiness of Co-plaintiff Plesha's working conditions, Co-plaintiff Concepción–Ortiz's claims for mental anguish suffer the same fate. Naturally, any claim for mental anguish on Co-plaintiff Concepción–Ortiz's part depended on whether Co-plaintiff Plesha could prove that Defendants acted negligently and/or provided an unseaworthy working condition. Having answered in the negative as to both claims, Defendants' motion for summary judgment as to Co-plaintiff Concepción–Ortiz's claim under Art. 1802 is **GRANTED** and said claim will be **DISMISSED WITH PREJUDICE.**

### Conclusion

For all the reasons discussed above, all of Plaintiffs' claims are **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**SO ORDERED.**